**Mary Kate SIEGEL, personal representative of the estate of Steven Alan Siegel**

v.

**MAZDA MOTOR CORPORATION, a/k/a Toyo Kogyo Co., Ltd., Appellant.**

**No. 87–7016.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1987.

Decided Dec. 29, 1987.

Edward S. Digges, Jr., with whom Michael T. Wharton, Baltimore, Md., was on the brief, for appellant.

Milton Heller, with whom J. Philip Kessel and Barbara Moir Condos, Washington, D.C., were on the brief, for appellees.

Victor E. Schwartz, Washington, D.C., and William H. Crabtree, Detroit, Mich., were on the brief for amicus curiae, Motor Vehicle Mfrs. Ass'n, Inc. and Product Liability Advisory Council, Inc., urging reversal.

Before RUTH B. GINSBURG, STARR and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

A tragic accident underlies this wrongful death action. On a cold January weekday morning in 1984, Steven Alan Siegel, then twenty-six years old, was driving alone on Rock Creek Parkway en route to work. He had purchased the car he was driving, a 1984 Mazda, in October 1983, and had thereafter driven it some 1600 miles without incident or difficulty. As the district judge described the episode, the car

> went off the road going 35 m.p.h. . . . No brakes were applied. No other vehicle was involved. There were no witnesses to what happened before the car hit the curb and tumbled over into Rock Creek. The driver was unable to communicate before he died.

Memorandum, *Siegel v. Mazda Motor Corp.*, No. 85–2896 (D.D.C. Dec. 19, 1986) (*Siegel* Memorandum).

The jury returned a verdict for Siegel's widow, on a product liability finding, in the total amount of $832,896.46; the district judge then confronted a motion for judgment notwithstanding the verdict properly predicated on an antecedent motion for a directed verdict on which the court had reserved its ruling. *See* FED.R.CIV.P. 50(b). The judge denied the motion, reasoning that this court's decision in *Stewart v. Ford Motor Co.*, 553 F.2d 130 (D.C.Cir. 1977), permitted a decision for plaintiff even if the judge were to appraise the evidence as insufficient to support fact findings of "car difficulty and the lack of driver error." *Siegel* Memorandum at 4. The district judge suggested, however, that the *Stewart* decision "should be further explicated," because there is apparent "merit in the view that some showing of difficulty in a car prior to an accident, or more specific negation of driver error should be [required]." *Siegel* Memorandum at 4–5.

We recognize that our *Stewart* decision is susceptible of more than one reading, and we take this occasion to explicate the holding of that case. We do so mindful that in this case, as in *Stewart* itself, *see* 553 F.2d at 133 & n. 1, 137–38, we are exercising our "best guess" on the content of District of Columbia law, appreciating that the District of Columbia courts, not

this federal court, now serve as definitive arbiters of D.C. tort law.

With that caveat, we hold that to warrant submission of a case to the jury under the product liability-circumstantial proof test advanced in *Stewart,* there must be sufficient evidence of car difficulty and lack of driver error so that a reasonable person could find it more probable than not that the accident occurred because of a vehicle malfunction. Having provided the explication invited by the district judge, we vacate the district court's judgment and remand the case so that the district judge may canvass the evidence—both on implied warranty and product liability—and rule anew on the motion for judgment n.o.v.

## I.

The automobile accident that led to the death of Steven Alan Siegel, and gave rise to this lawsuit, occurred on the morning of January 27, 1984 on Rock Creek Parkway in the District of Columbia. The vehicle involved was a new Mazda 626 LX which Siegel had purchased some three months earlier. Prior to the accident, Siegel had operated the car without incident. He had experienced no mechanical difficulties, and no repair or maintenance work had been done on the vehicle.

At the time of the accident, Siegel was taking his customary route to work; he was proceeding southbound on a winding section of the Parkway. The weather was cold, clear and dry; some snow and ice from a recent snowstorm remained on the roadside. Rounding a turn, Siegel's Mazda left the road, hit the curb, slid across snow-covered grass abutting the Parkway, struck a water fountain, and came to rest, upside down, in swollen Rock Creek.

Passersby made unsuccessful efforts to extricate Siegel from the submerged car. Rescue workers ultimately raised the Mazda to the creek bank and removed Siegel from the car. By that time, however, Siegel had suffered brain damage so severe

that he was never able to relate what he perceived or believed to have gone awry. Siegel died some sixteen months after the accident.

No one saw the entire accident sequence. Two persons, a motorist travelling southbound and a jogger, saw portions of the episode beginning no earlier than the moment Siegel's Mazda left the Parkway and struck the curb, already out of control. Park police took no measurements, nor did they make any other scene investigation.

Mary Kate Siegel, widow of Steven Alan Siegel, commenced this wrongful death action against Mazda Motors Corporation (Mazda) in the United States District Court for the District of Columbia, invoking federal jurisdiction on the basis of the parties' diversity of citizenship.[1] At trial, plaintiff endeavored to prove entitlement to recover on two alternative theories. First, plaintiff charged breach of an implied warranty; she contended that minute metal particles in the Mazda's power steering fluid had jammed the steering gear, and that this specific defect had caused the car to leave the roadway. Second, she invoked a strict product liability theory charging that some general, *i.e.,* unspecified, defect, attributable to Mazda, caused the accident.

Plaintiff's proof was entirely circumstantial. She presented evidence tending to show that the accident had not been caused by driver intoxication, excessive speed, or hazardous road conditions. She called an expert in support of her assertion that the Mazda could have left the Parkway due to a vehicle malfunction. Based on photographs of tire marks made by the Mazda when it struck the curb, her expert testified that the car had hit the curb with its front wheels turned fully to the right. Plaintiff maintained that these tire marks showed that the Mazda left the road due to a steering column defect, for no driver, however careless, would turn the steering wheel in such a fashion absent a vehicle malfunction. While plaintiff's expert ex-

---

1. Plaintiff originally named as an additional defendant Rosenthal Imports Ltd., the dealer from whom Steven Alan Siegel had purchased the car. By pretrial stipulation, all claims against the dealer were dismissed without prejudice, *see* FED.R.CIV.P. 41(a), and the trial proceeded against Mazda as sole defendant.

pressed no opinion as to the actual cause of the accident, he stated that metal particles in the power steering fluid, if they became lodged between component parts in the steering column, could hinder car steerage and cause an unintended turn of the front wheels.

Mazda countered with evidence intended to show that driver error, rather than vehicle defect or malfunction, had caused the Mazda to leave the road. To rebut plaintiff's "particles theory," Mazda introduced technical evidence indicating that the shearing forces present in the power steering system would prevent any metal particles that found their way into the operative parts of the steering column from hindering the power-assist feature and that, in any case, loss of power steering would not compromise manual steering capabilities. In addition, Mazda attempted to show that no other manufacturer-related defect had caused the accident. Mazda had made a post-accident inspection of Siegel's car, including the steering column, and pointed out that its inspection had uncovered no defective components. Mazda's expert stated that, in his view, the accident most likely resulted from speed-induced driver loss of control. His analysis of the tire mark photos led him to conclude that the marks were made not by the Mazda's front tires, but by the left side tires sliding or "yawing" sideways after spinning around to face the direction from which the car had come. The expert then posited several accident scenarios consistent with a car sliding sideways out of control following driver error.

After delivering a charge covering plaintiff's two theories, the trial judge furnished the jury with a special verdict form on which the jury voted as set out below:

B. The jury unanimously finds Mazda liable based on

    Implied warranty  \_\_\_

    Product liability  <u>X</u>

(Check one or both, as the case may be.)

Record Excerpts (R.E.) at 23, 26. Responding to the verdict form's inquiries on damages, the jury awarded plaintiff $50,000 for loss of her husband's services, and $782,-896.46 "for all other elements of damages claimed." *Id.* at 23. The executed verdict form, we observe, did not ask the jury to vote "Yes" or "No" as to each liability base. We therefore cannot tell what, if any, determination the jury made on the implied warranty theory; the executed form reveals only that the jury found for Mary Kate Siegel and based that finding on the product liability (general or unspecified defect) claim.

In this appeal, Mazda challenges the district court's entry of judgment on the jury's verdict and that court's refusal to grant Mazda's dispositive motions, first for a directed verdict, *see* FED.R.CIV.P. 50(a), then for judgment notwithstanding the verdict. *See* FED.R.CIV.P. 50(b). Mazda maintains that the circumstantial evidence plaintiff presented was insufficient to justify submission of the case to the jury. In particular, Mazda urges that to gain jury consideration of the product liability theory plaintiff put forward, a plaintiff must introduce both evidence of prior or contemporaneous vehicle malfunction and evidence negating driver error. Anything less, Mazda asserts, is tantamount to a liability system in which "accident plus injury, without more, equals recovery." Brief of Defendant-Appellant Mazda Motor Corporation at 18.

## II.

As we observed at the outset, our decision today represents our best effort to project or predict how the District of Columbia courts would rule in this matter, for federal courts exercising diversity jurisdiction in the District apply the doctrines of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), analogously: we attempt to ascertain both the choice of law and substantive decision a court of the District would make.

The district court correctly identified the decisions of this court most closely in point: *Stewart v. Ford Motor Co.*, 553 F.2d 130 (D.C.Cir.1977), and *Hall v. General Motors*

*Corp.,* 647 F.2d 175 (D.C.Cir.1980). Both decisions concern the "general defect theory" upon which plaintiffs may proceed in products liability cases; both regard that theory as operative in District of Columbia courts. *See McCrossin v. Hicks Chevrolet, Inc.,* 248 A.2d 917, 919–20 (D.C.App.1969) (relied upon in *Stewart,* 553 F.2d at 137 & n. 7). *Stewart* and *Hall,* like the instant case, present product liability claims arising out of tragic automobile accidents. Both hold that a plaintiff need not pinpoint a specific vehicle defect in order to prevail on such a claim. "[T]he existence of a defect may be proved by circumstantial evidence," *Stewart* declared, 553 F.2d at 137, specifically, (1) evidence that "tend[s] to negate causes for an accident other than a defect in the product," coupled with (2) "proof which would suggest that whatever defect might have existed was one introduced into the product by the defendant." *Id.*

To grasp more concretely what proof the *Stewart* court had in view, we turn to what the record in that case showed. In *Stewart,* the four occupants of a new Ford Thunderbird were killed when the Thunderbird suddenly veered off of the highway, ran along a median strip for 150 feet, struck a bridge curbing, and plunged into a river. 553 F.2d at 133. The car had been purchased just twelve days prior to the accident. Because of the "extreme newness" of the vehicle and the absence of any evidence that the car had been altered after its purchase, responsibility of the manufacturer for any defect plaintiffs proved apparently was not contested at trial. 553 F.2d at 139. Plaintiffs' evidence negated likely accident causes other than a vehicle malfunction. The driver was not drunk, drugged, or suffering from any other disability that might have affected his driving. The brakes took effect in less than a second after the car left the pavement, so one could infer that the driver had not fallen asleep. Road conditions were good, the car

was not travelling at an excessive speed, and there had not been a sudden blowout. *Id.*

In marked contrast to the instant case, eye witness testimony was furnished by an occupant of the vehicle that had followed the Thunderbird from the start of the journey. Through the rear window of the Thunderbird, the witness saw the driver "wrestling" with the steering wheel and observed the front seat passenger reaching over in an attempt to assist the driver in steering the car. 553 F.2d at 134. This testimony, we pointed out, indicated car difficulty; it "support[ed]" the conclusion that something had gone wrong with the steering system." 553 F.2d at 139. The "car difficulty" eye witness testimony, we added, was shored up by "[t]he fact that the car traveled 150 feet in a straight line before leaving the ground ..., since it would be reasonable to expect the driver of a responsive car to attempt to turn it away from the edge of the road." *Id.* From all the evidence just recounted, the *Stewart* court held that "[p]laintiffs were entitled to ask the jury to infer that the accident was caused by some unknown defect which caused the steering system to malfunction." *Id.* at 139.

In *Hall,* we applied what we understood to be the rationale in *Stewart. Hall* was submitted to the jury with a charge that has come to be known as "the *Stewart* instruction." That instruction informs the jury that a plaintiff need not prove a specific defect in a new vehicle involved in an accident:

> It is sufficient if you find from the evidence that the motor vehicle in question went out of control causing the accident as a result of some mechanical failure due to an obvious or hidden defect in the car which existed at the time that it left [the manufacturer].

*Hall,* 647 F.2d at 178; *see Stewart,* 553 F.2d at 136.[2]

---

**2.** Modeled after the instructions in *Stewart,* the current standardized civil jury instructions for the District of Columbia include these statements:

> It is sufficient if you find from the evidence that the [accident occurred] as a result of some mechanical failure due to an obvious or hidden defect in the product which existed at the time it left [the manufacturer].

Explaining why we considered the *Stewart* instruction proper in *Hall*, we first summarized the evidence negating driver error: the driver in *Hall* was in excellent health and did not drink or use drugs; she was an experienced driver who, for fourteen years, had been a part-time cab driver; she was familiar with the area in which the accident occurred; her speed had not been excessive. *Id.* Next, we recounted the numerous mechanical difficulties the Halls had experienced with their new car, and their several returns to the dealer seeking correction of these problems: "the engine would miss, vibrate, hesitate upon acceleration, backfire, and run hot; the brakes would squeal; the idle was rough; sometimes the car would pull to the right, sometimes it would 'just take off.'" 647 F.2d at 179.[3] This evidence sufficed, we concluded, to permit a jury to find that the car in *Hall* was defective when purchased, was never put in proper repair despite the owner's repeated efforts to secure correction, and went out of control as a result of some mechanical failure attributable to the manufacturer. *Id.*

*Stewart* and *Hall* did not expressly say that, to warrant submission of a case to the jury under the *Stewart* instruction, there must be sufficient evidence of car difficulty and lack of driver error so that a reasonable person could find it more probable than not that the accident occurred because of a vehicle malfunction. But that requirement seems to us implicit in our recitation in those opinions of the proof presented, proof distinctly tending to show mechanical

problems with the vehicle and absence of driver error.[4] We now state explicitly that reasonably specific negation of driver error and some showing of difficulty in a car at the time of, or prior to, an accident is indeed required by our *Stewart* and *Hall* decisions.[5] We recognize that such evidence may not always admit of neat compartmentalization. Proof negating driver error may sometimes simultaneously support an inference that a problem with the car caused the accident, and the converse may also hold true. Whatever the mix or blend of evidence in a particular case, however, the cumulative effect of plaintiff's proof must make it reasonable to conclude that the accident, more likely than not, resulted from a vehicle malfunction.

With this clarification of the demands on plaintiffs who seek to prove the existence of a defect by circumstantial evidence, we vacate the district court's judgment and remand the case so that the district judge may reconsider the motion for judgment n.o.v. We leave to the district judge the task of surveying the evidence, in the first instance, to determine whether plaintiff's proof in this case meets the *Stewart-Hall* standard. We also leave open for determination on remand the fate of the implied warranty claim. While the district judge said that Mazda's proof "demolished" the theory underlying the implied warranty claim, *Siegel* Memorandum at 2, we cannot discern from the completed verdict form the jury's assessment of this claim, nor can we tell whether the trial judge considered the claim meet for jury resolution.

---

The law does not require plaintiffs to prove the mechanical failure by specific, physical evidence, nor does it require plaintiff [sic] to prove exactly what part of (the product) was defective, as plaintiffs may prove the mechanical failure solely by circumstantial evidence. Instruction 11–13, Standardized Civil Jury Instructions for the District of Columbia (rev. ed. 1981).

3. The plaintiff in *Hall* was the injured owner-driver of the car, and was able to testify personally on difficulties with the car she had experienced both prior to, and at the time of, the accident.

4. The *Stewart* court said that it "need not go so far" as the Supreme Court of Hawaii which had "suggested that if an accident completely de-

stroyed car and driver, so that no defect could be shown, recovery might 'be allowed anyway as a carefully driven vehicle does not leave the road in the absence of a defect in the car.' *Stewart v. Budget Rent–A–Car Corp.*, 52 Haw. 71, 470 P.2d 240, 244 n. 5 (1970)." *Stewart*, 553 F.2d at 139.

5. In *Stewart*, car difficulty was indicated at the time of the accident, *i.e.*, the driver was seen "wrestling" with the wheel and the front seat passenger attempted to assist the driver in controlling it. In *Hall*, there was evidence concerning both malfunctioning at the time of the accident and numerous problems prior to the accident. *Hall*, 647 F.2d at 178–79.

CONCLUSION

For the reasons stated, the judgment of the district court is vacated and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*