Samuel McFARLANE and Hyacinth
McFarlane, Appellants,

v.

CATERPILLAR, INC., and Alban
Tractor, Inc., Appellees.

No. 90–5227.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 11, 1992.

Decided Sept. 8, 1992.

Edwin H. Harvey, with whom James Benny Jones, was on the brief, for appellants.

Philip L. Cohan, with whom Benjamin S. Boyd was on the brief, for appellees. Susan E. Fleischner and Bruce F. Robertson, also entered appearances for appellees.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Plaintiffs Samuel and Hyacinth McFarlane appeal a judgment notwithstanding the verdict in favor of defendant Caterpillar, Inc., in a suit brought under the district court's diversity jurisdiction. The court found insufficient evidence to support the jury's finding that a manufacturing defect was responsible for Mr. McFarlane's injuries. As Mr. McFarlane did not prove that the brakes of his Caterpillar bulldozer had failed or that it was more probable than not that his accident was caused by a mechanical defect attributable to the manufacturer, we affirm.

## I. Background

This case concerns a bulldozer accident that occurred on May 14, 1987, in Silver Spring, Maryland. The bulldozer, a model DH5 tractor, was manufactured by Caterpillar, Inc., an Illinois corporation, and sold by co-defendant Alban Tractor, Inc., of Maryland. Samuel McFarlane, a resident of the District of Columbia, operated the bulldozer for the Driggs Corporation and was injured in the accident. He brought a claim in district court against the defendants on theories of strict liability, breach of warranty, and negligence. Mrs. McFarlane sued for loss of consortium.

Mr. McFarlane, a bulldozer operator of considerable experience, testified that at approximately 4:00 p.m. the tractor lost all power and started to roll down a fifty-foot slope. He stated that he tried to apply the brakes with the foot pedal, but they would not work; he attempted to lower the bulldozer blade to stop the vehicle, but it would not move; and when he tried to put the bulldozer into gear, the gear would not engage. Mr. McFarlane suffered serious injuries when he failed to stop the bulldozer.

Mr. McFarlane also testified that he had been operating the tractor all day and had experienced mechanical difficulties with it that morning. Specifically, he stated that it would not stay in gear, that the emergency lights flashed, and that various gauges indicated the machine's pressure was low.

Mr. McFarlane stated that the bulldozer, which was seven months old, had experienced difficulties with its hydraulic systems ever since its delivery. He testified that its "braking doesn't work whatever time we have loss of pressure on the hydraulic system and the transmission." Trial Transcript, June 4, 1990 ("Tr. 6/4/90") at 11. With respect to repair work, he could only report that the tractor had been serviced "[s]o many different times [by] so many different mechanics," that he could not remember individual mechanics or episodes. *Id.* at 13.

The McFarlanes' expert, Richard Brackin, testified that he believed the brakes, which he described as "pressure-applied," failed because of a leak in the hydraulic steering and brake systems. Trial Transcript, June 6, 1990 ("Tr. 6/6/90") at 40–41, 43. This conformed with the McFarlanes' theory that a loss of pressure in the hydraulic system had resulted in a brake failure. Mr. Brackin drew this conclusion after reviewing information concerning the accident, schematic diagrams of the bulldozer's hydraulic systems, and service reports on the machine.

On cross-examination, Mr. Brackin was confronted with the fact that the bulldozer did not have "pressure-applied" brakes. Rather, it was equipped with "spring-ap-

plied hydraulic pressure release brakes." Tr. 6/6/90 at 66. As the bulldozer manual explains, "[i]f the engine or power train hydraulics are inoperable, the brakes are applied [by the spring] and the machine cannot be moved...." *Id.* Conversely, if the hydraulic system is functioning and the brake pedal is not depressed, the hydraulic pressure will compress the spring and the machine will move.

Faced with this fact, Mr. Brackin acknowledged that he had misunderstood how the brakes worked and admitted that a loss of hydraulic pressure would cause the brakes to be applied, not released. Thus, when the McFarlanes' counsel asked him, "Why didn't [Mr. McFarlane] have any brakes," Mr. Brackin responded:

> I can't answer that specifically at the moment. I'm going to have to rethink the problem i[n] terms of the spring applied brake.... If the hydraulic pressure was lost, then the brakes should come on by action of the spring.

*Id.* at 69–70. Asked again "Why did the brake fail," he answered "I don't know at the moment. I don't know." *Id.* at 72.

At the close of the McFarlanes' case, the defendants moved for a directed verdict. This motion was denied, although the court indicated that it would consider a motion for judgment n.o.v. if the jury found for the McFarlanes. The defendants then called three witnesses, including the General Superintendent for the Driggs Corporation, Larry Landis. Mr. Landis testified that he inspected the bulldozer minutes after the accident and found that all systems, including the brakes and blade, were working. He also noted that the bulldozer was put back in service the following day.

At the close of all the evidence, the court denied the defendants' renewed motion for a directed verdict and refused the McFarlanes' request for instructions on proof of defect by circumstantial evidence. The jury returned a general verdict for the McFarlanes against Caterpillar and for Alban Tractor against the McFarlanes. On a special verdict sheet, the jury stated that a manufacturing defect had caused the acci-

dent, which it identified as "brakes & valves."

On July 27, 1990, the court granted Caterpillar's motion for judgment n.o.v. and its conditional motion for a new trial. *See McFarlane v. Caterpillar, Inc.*, No. 89–2341, mem. op. (D.D.C. July 27, 1990) ("Mem. Op."). In granting the judgment n.o.v. under Fed.R.Civ.Pro. 50(b), the district court addressed only the McFarlanes' claim of a manufacturing defect, as "it is obvious from the record ... that the plaintiffs' other claims were never seriously presented at trial." *Id.* at 5 n. 1. The court, sitting in diversity, applied District of Columbia law to that claim.

The court first found that "plaintiffs presented absolutely *no direct proof* of a manufacturing defect." *Id.* at 7 (emphasis in original). The court then held that the "meager circumstantial evidence" of a defect, *id.*, consisting only of Mr. McFarlane's "not unbiased" testimony that he pressed the brake pedal and it did not work, *id.* at 9, was not sufficient to show a general defect under District of Columbia law as explained in *Siegel v. Mazda Motor Corp.*, 878 F.2d 435 (D.C.Cir.1989) ("*Siegel II*"). *Id.* at 8–11. In particular, the court found that the McFarlanes had failed to "adequately eliminate[ ]" the "possibility of driver error or misuse." *Id.* at 10. The court also found that it was "quite possible that the machine was improperly serviced or improperly maintained" by persons other than Caterpillar. *Id.* at 11. "Due to the array of other very likely explanations for this accident," the court "conclude[d] that no reasonable jury could have concluded that it is more likely than not that a manufacturing defect caused the accident." *Id.* This appeal followed.

## II. DISCUSSION

### A. Judgment N.O.V.

■ Our review of a district court's grant of judgment n.o.v. is undertaken *de novo*. To conclude that judgment n.o.v. is warranted, we must find that "there can be but one reasonable conclusion drawn from the evidence." *Morgan v. District of Columbia*, 824 F.2d 1049, 1056 (D.C.Cir.1987)

(internal quotation marks and citation omitted). In conducting this inquiry,

the question for us is not whether there was some evidence, but whether, in terms of the actual quantum and quality of proof necessary to support liability, there was sufficient evidence upon which a jury could properly base a verdict for the [plaintiff].... To survive a motion for judgment n.o.v., the evidence ... introduced has to be more than merely colorable; it must have been significantly probative if the jury's verdict is to stand.

*Siegel II*, 878 F.2d at 437 (citations and quotation marks omitted; emphasis deleted).

In this case, the McFarlanes failed to offer evidence of a specific defect that was "significantly probative" of Caterpillar's liability. The only specific defect claimed by them was that a loss of hydraulic pressure had caused the brakes to fail. This claim was based on Mr. Brackin's misunderstanding of the nature of the bulldozer's braking system. In contrast, Caterpillar was able to demonstrate that the brakes were spring applied and hydraulically released so that a loss of pressure would have caused them to engage. Thus, there was no evidence that would enable the jury to find Caterpillar liable on the basis of the specific defect claimed by the McFarlanes.

■ District of Columbia law, however, permits a plaintiff to prove liability in a manufacturing defect suit by adducing evidence of a general defect. Thus, in *Hall v. General Motors Co.*, 647 F.2d 175 (D.C.Cir. 1980), we affirmed a jury award of damages in a products liability suit based on a general defect theory. Mrs. Hall was driving a five-month-old Buick when, according to her, it suddenly veered off the road and hit a tree. She testified that she had been driving at moderate speed, that she was an experienced driver who had no physical or mental impairments, and that she heard an explosion before the car swerved off the road. *Id.* at 177. She and her husband presented evidence that "[s]urging, vibrations, and other malfunctions existed ... from the time Mrs. Hall purchased the car," yet despite inspection and servicing by the General Motors dealer, "no correction was accomplished." *Id.*

Based on our decision in *Stewart v. Ford Motor Co.*, 553 F.2d 130, 137–38 (D.C.Cir. 1977), we determined that a plaintiff could establish a manufacturing defect

by presenting (1) evidence tending to negate causes for the accident other than a defect in the car, and (2) evidence tending to show that the defendant-manufacturer introduced into the car whatever defect might have existed.... [P]roof that the product was new would warrant a jury inference that a defect, if there was one, existed at the time the product entered the stream of commerce.

*Id.* at 178 (citation omitted). Applying these standards, we concluded that the evidence submitted by the Halls was sufficient to support a finding of a general defect. In particular, we noted that Mrs. Hall's testimony had negated the likelihood of driver error, that the car was only five months old, and that the Halls had experienced difficulties from the time of purchase that the dealer had failed to correct. *Id.* at 178–79.

More recently, in *Siegel II*, we affirmed a grant of judgment n.o.v. because the plaintiff had failed to proffer sufficient evidence to negate the possibility that driver error had caused her husband's fatal automobile accident. Mr. Siegel was driving his three-month-old Mazda to work in the District of Columbia when it veered off the road and crashed into Rock Creek. *Siegel II*, 878 F.2d at 437. During the three months prior to the accident, the Siegels had experienced no problems with the car and had not had it serviced. *Id.*

At trial, the plaintiff's expert theorized that the accident had been caused by "microscopic particles from improperly molded parts inside the power steering system [that] had entered the surrounding fluid." *Id.* at 438. In response, the defendant offered several alternative explanations for the accident, among them that on rounding a curve at excessive speed, the car skidded and the driver lost control. Another hypothesis was that when he realized that he

was driving in the wrong lane, Mr. Siegel pulled on the steering wheel and lost control of the car. *Id.* at 438–39.

Faced with these conflicting theories, we determined that the plaintiff had failed to show that it was "more probable than not" that a manufacturing defect had caused the accident. *Id.* at 439. We held that

> [w]hen the record ... contains competing, unrebutted hypotheses ..., proof that a mechanical defect was merely capable of causing the accident does not satisfy the standard ... that such an explanation be "more probable than not." In this case, we can discern no basis upon which to say that any one of the possible explanations is "more probable" than the others. For the jury to have made such a choice ... required it to engage in sheer speculation[.]

*Id.* (internal quotation marks and citation omitted).

■ As is evident from a review of *Siegel II* and *Hall,* in order to prove a general defect, a plaintiff must show that it is more likely than not that the accident was caused by a mechanical defect attributable to the manufacturer. At a minimum, this requires the plaintiff to offer evidence showing difficulties with a vehicle prior to, or at the time of, the accident and tending to negate causes other than a defect in the vehicle, including a "reasonably specific negation of driver error." *Siegel v. Mazda Motor Corp.,* 835 F.2d 1475, 1480 (D.C.Cir. 1987) ("*Siegel I*"); *see also Hall,* 647 F.2d at 178. We have found several factors relevant to this showing: the age of the vehicle, its service history, and testimony as to the possibility of alternative causes. *See Siegel II,* 878 F.2d at 438–39; *Hall,* 647 F.2d at 178–79. It is not enough for a plaintiff to prove that a mechanical defect was capable of causing the accident. In the absence of evidence that one possible explanation is more probable than another, the jury will not be allowed to speculate as to which actually caused it. *Siegel II,* 878 F.2d at 439.

The McFarlanes argue that this case meets the *Hall* and *Siegel II* standards. They assert that Mr. McFarlane was an experienced operator, the defendants adduced no evidence that he was fatigued or otherwise culpable, and the bulldozer was only seven months old and had experienced problems since its delivery to Driggs. This evidence, they claim, is sufficient to show that a manufacturing defect existed and that it was more probable than not that the accident had been caused by that defect.

■ We disagree. The McFarlanes failed to offer sufficient testimony to negate the possibility of alternative explanations for the accident. As an initial matter, while it is true that Mr. McFarlane was an experienced operator, appellants are incorrect in asserting that "no evidence exists that operator error by Mr. McFarlane caused the accident." Brief for Appellants at 23. The General Superintendent for Driggs, Mr. Landis, testified that he inspected the bulldozer minutes after the accident and found that the hydraulic system, brakes, blades, and transmission were all working. *See* Tr. 6/6/90 at 80–82. The plain import of this unrebutted testimony is that the bulldozer was in good working order at the time of the accident and, by necessary implication, Mr. McFarlane may have been at fault.

Furthermore, Mr. McFarlane's statement, on cross-examination, that he attempted to apply the brakes with his right foot was inconsistent with his deposition testimony that he normally applied the brakes with his left foot and the accelerator with his right. *See* Tr. 6/4/90 at 39–40. As the district court noted, "[i]t is entirely possible, as Caterpillar suggests, that Mr. McFarlane inadvertently stepped on the decelerator [sic] instead of the brakes." Mem. Op. at 10.

We also find serious flaws in the McFarlanes' claim that the age and service record of the bulldozer support a finding of a general defect. It is true that the tractor was only seven months old, as compared with five months in the case of Mrs. Hall's Buick. The comparison, however, ends there. It appears from the opinion in *Hall* that the only work done on the car prior to the accident was performed by the dealer's mechanics in failed attempts to correct the

specific problems that the Halls had complained about. Therefore, the jury in that case could reasonably find that any defect in the vehicle was there at the time of purchase and was not introduced as a result of subsequent maintenance or repairs.

The situation before us is significantly different. During the seven months of Driggs's ownership, the bulldozer had been in use for more than 1,000 hours, and it had been serviced on numerous occasions by both the dealer and Driggs. Therefore, it was quite possible that any mechanical defect in the bulldozer was the result of improper maintenance or repairs rather than the fault of the manufacturer. Moreover, none of the difficulties to which Mr. McFarlane testified could have supported the jury's finding that the accident had been caused by manufacturing defects in the "brakes & valves." *See id.* at 4–5. As we have previously explained, a brake failure could not have resulted from a faulty hydraulic system; and, as the district court noted, there was no evidence to suggest "that defective valves in any way proximately caused this accident." *Id.* at 7 n. 2.

Nor is the McFarlanes' case helped by the various service reports that they placed in evidence. *See* Appendix for Appellants at 11–42. Brakes are mentioned in only one of them—a handwritten paper headed "Clutch & Brake." *Id.* at 32. It compared the actual hydraulic pressure readings with those in the manufacturer's specifications when the tractor's clutches and brakes were placed in various positions. One line indicates an actual pressure reading of zero when the brake pedal was down rather than the "400 ± 22" set out in the specifications. *Id.* But even if this report does imply a defect in the brakes' hydraulic system, we are met with the expert evidence that when there is no hydraulic pressure, the spring-activated brakes will engage.

Finally, the McFarlanes have failed to rule out faulty maintenance or repairs as alternative causes of the accident. In fact, Mr. McFarlane's own testimony lends support to this hypothesis. He reported that the bulldozer had been worked over "[s]o many different times [by] so many differ-

ent mechanics" that he could not remember individual mechanics or episodes. Tr. 6/4/90 at 13. The fact that the tractor had been serviced the morning of the accident as a result of difficulties Mr. McFarlane had experienced with it earlier that day, *id.* at 21–22, is consistent with the alternative theory that it had been improperly serviced.

We conclude, as did the trial judge, that the evidence introduced by the McFarlanes was insufficient to support a finding that the accident had been caused by defective brakes. Nor will it support a finding that a manufacturing defect was a more probable cause of the accident than such alternatives as operator error or faulty repairs.

### B. Trial Errors

The McFarlanes also claim that the district court committed several reversible errors during the course of the trial. They assert that the court erred in refusing to give the jury an instruction concerning the use of circumstantial evidence to prove a defect, and that it improperly excluded evidence of the degree of the slope on which the accident occurred. But even if we were to accept their arguments, a reversal of the case would not be required. Neither of these alleged errors could have adversely affected the jury's verdict, as it found in the McFarlanes' favor. *See* Fed.R.Civ.P. 61; *cf. Williams v. U.S. Elevator Corp.,* 920 F.2d 1019, 1022–25 (D.C.Cir.1990).

■ One of their arguments, however, does warrant further discussion. The McFarlanes complain that the court erred in excluding a post-accident service report pursuant to Rule 407 of the Federal Rules of Evidence, which renders inadmissible evidence of subsequent remedial measures when used "to prove negligence or culpable conduct in connection with [an] event." The excluded report contained a statement indicating that the dimensions of a spool in the hydraulic system did not meet manufacturing specifications. This portion of the record was clearly not "evidence of ... subsequent measures" that must be excluded under Rule 407; rather, it was evidence of the unaltered state of the spool at

the time it was inspected. As such, it could have been admitted into evidence with necessary redactions. *See, e.g., O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1205 (8th Cir. 1990) (holding that "[t]he trial court correctly required that plaintiffs redact references to voluntary remediation" and "properly admitted the remainder of [a] report").

■ We nevertheless find that the court did not err in excluding the evidence because the McFarlanes never laid a proper foundation for its introduction as a business record. *See* Fed.R.Evid. 803(6). The only witness called to testify about the document admitted that he had never seen it, did not prepare it, and had no idea what it was. Under these circumstances, it was appropriate for the court to exclude the evidence as hearsay. *See* Fed.R.Evid. 802.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is

*Affirmed.*