81 F.3d 168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
KING CRAB, INC., an Alaska corporation; Ocean Beauty
Alaska, Inc., an Alaska corporation; Ocean Pride
Alaska, Inc., an Alaska Corporation,
Plaintiffs-Appellants,
v.
SEATTLE REFRIGERATION, INC., a Washington corporation;
Jones Chemicals, Inc., a New York corporation,
Defendants-Appellees.
Joseph NUNES, Plaintiff,
v.
KING CRAB, INC., an Alaska corporation; Ocean Beauty
Alaska, Inc., an Alaska corporation; Ocean Pride
Alaska, Inc., an Alaska corporation,
Defendants/Cross-Defendants/Appellants,
v.
SEATTLE REFRIGERATION, INC., a Washington corporation;
Jones Chemicals, Inc., a New York corporation,
Defendants/Cross-Defendants/Appellees.
 No. 94-36228.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1995.
Decided March 29, 1996.
 
 Before: FLETCHER, KOZINSKI, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 King Crab, Inc., Ocean Beauty Alaska, Inc., and Ocean Pride Alaska, Inc. (collectively "Ocean Beauty") appeal the judgment against them after a trial to the court. Ocean Beauty was held solely responsible for the injuries to Joseph Nunes, a crew member of the Kodiak Queen, a commercial fishing boat owned by Ocean Beauty. Nunes was injured when a cylinder filled with ammonia exploded. Nunes sued Ocean Beauty, which in turn sued Jones Chemicals, Inc., the company that furnished the filled cylinder. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. BACKGROUND
 
 3
 Jones Chemicals sells metal cylinders filled with ammonia. The evidence at trial was as follows: Jones' employees place each empty cylinder on a scale and fill it until the total weight equals the weight of the empty cylinder plus 150 1/2 pounds of ammonia. While each filling requires a separate mental calculation, the process has three safety features: an overfilled cylinder makes a distinctive sound, a properly filled cylinder makes a distinctive sound, and employees double-check their math. Jones Chemicals fills thousands of cylinders every year, and but for this incident only one other cylinder is known to have exploded.[1]
 
 
 4
 On February 6, 1991, Jones Chemicals filled cylinder BNH50 with ammonia. The cylinder had no metallurgical defects. On April 24, 1991, the Seattle Refrigeration & Manufacturing Company shipped it from Jones Chemicals' plant in Tacoma, Washington, to Ocean Beauty's warehouse in Kodiak, Alaska.
 
 
 5
 On June 18, 1991, cylinder BNH50 was loaded onto the Kodiak Queen. The ship set out on a commercial fishing trip with a crew that included Nunes. The Kodiak Queen returned to port on June 21, 1991. A few hours later, while Nunes was preparing to empty cylinder BNH50 into the ship's refrigeration system, the cylinder exploded, injuring Nunes.
 
 
 6
 Two actions, Ocean Beauty's suit against Jones Chemicals and Seattle Refrigeration, and Nunes' suit against all three, were consolidated for trial. The key issue was whether Ocean Beauty caused the explosion by dropping the cylinder or Jones Chemicals caused the explosion by overfilling the cylinder. The district court held Ocean Beauty solely responsible. On appeal, Ocean Beauty argues that it was not negligent and that Jones Chemicals is liable under strict products liability and breach of implied warranties. Ocean Beauty's arguments lack merit.
 
 II. OCEAN BEAUTY'S NEGLIGENCE
 
 7
 The district court found that Ocean Beauty was negligent under the Jones Act and that the Kodiak Queen was not seaworthy. "[D]eterminations of negligence in admiralty cases are findings of fact which will be given application unless clearly erroneous."[2] Exxon Co. v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir.), cert. granted, --- U.S. ----, 116 S.Ct. 493 (1995).
 
 
 8
 The expert testimony of Thomas Archbold, a professor of engineering at the University of Washington, supports the district court's findings. Archbold testified that the most likely cause of such an explosion would be rupture from a drop of the cylinder. At the time of the explosion, Nunes was planning to empty the cylinder into the refrigeration system which would necessitate its being moved. In the words of the district court, "the time when this thing went off was the very moment when, in a four-and-a-half-month of time, somebody either had been handling it or was going to handle it right away." Proceedings of Oct. 13, 1994, at 3. The court's refusal to disregard this circumstance as a mere coincidence and its inference from it of some concurrent damage to the cylinder were not clearly erroneous.
 
 
 9
 The only other theory offered to explain the explosion--that Jones Chemicals overfilled the cylinder and heat from the sun expanded the gas--was not supported by the evidence. Archbold testified without contradiction that an overfilled cylinder could not explode unless it reached an equilibrium temperature of 110? , and no evidence suggests such heating occurred. Indeed, Nunes touched the cylinder 20 minutes before the explosion and it was not warm. Nor was there any evidence to support the suggestion that the cylinder had been overfilled at the plant--all the evidence was to the contrary.
 
 III. STRICT PRODUCTS LIABILITY
 
 10
 Ocean Beauty argues that the district court erroneously rejected its strict products liability claim against Jones Chemicals.[3] We disagree.
 
 
 11
 To prevail on such a claim against Jones Chemicals, Ocean Beauty had to prove that the cylinder was in "a defective condition unreasonably dangerous to the user or consumer." Restatement (Second) of Torts § 402-A(1); Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1134-35 (9th Cir.1977). Ocean Beauty submitted no direct evidence that the cylinder was in a defective or dangerous condition. Relying on circumstantial evidence only, Ocean Beauty had to prove "the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant." Glanzman v. Uniroyal, 892 F.2d 58, 60 (9th Cir.1989); see also Franks v. National Dairy Prods. Corp., 414 F.2d 682, 687 (5th Cir.1969); Siegel v. Mazda Motor Corp., 835 F.2d 1475, 1480 (D.C.Cir.1987) (Ginsburg, J.) (plaintiff must produce "reasonably specific negation" of alternative explanations of accident). Because the district court found that Ocean Beauty had been negligent, there is "evidence of reasonable secondary causes" of the explosion, other than actions by Jones Chemicals.
 
 
 12
 Nor does res ipsa loquitur assist Ocean Beauty. Although applicable to admiralty cases, it requires: 1) an injury-producing event of the kind that ordinarily does not occur without negligence, 2) the defendant's exclusive control of the instrument causing the injury, and 3) lack of contributory negligence by the plaintiff. Ashland v. Ling-Temco-Vought, Inc., 711 F.2d 1431, 1437 (9th Cir.1983). While ammonia cylinders usually do not explode without negligence, Ocean Beauty cannot meet the latter two requirements.
 
 IV. BREACH OF WARRANTY
 
 13
 Ocean Beauty also argues that Jones Chemicals breached two implied warranties: a warranty of merchantability and a warranty of workmanlike service. Neither argument has merit.
 
 
 14
 Under the Uniform Commercial Code, every contract of sale contains an implied warranty that the goods are merchantable. U.C.C. § 2-314. Merchantable goods are goods not unsafe or otherwise defective. Given the district court's finding that Ocean Beauty was negligent and responsible for the injuries to Nunes, and Ocean Beauty's lack of proof that Jones Chemicals sold an unsafe or otherwise defective cylinder, Ocean Beauty cannot prevail on this theory.
 
 
 15
 Maritime law also allows recovery for a breach of warranty of workmanlike service. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 133-34 (1956) (where stevedore company's work injured longshoreman, stevedore company must indemnify shipping company for payments to longshoreman). However, the district court's finding that Ocean Beauty, not Jones Chemicals, was negligent prevents a finding that Jones Chemicals' work caused Nunes' injury. Moreover, while the Ryan line of cases applies to a variety of maritime "services," Thomas J. Scheonbaum, Admiralty and Maritime Law § 5-8 at 193 (2d ed. 1994); see, e.g., United States v. San Francisco Elevator Co., 512 F.2d 23 (9th Cir.1975) (repairs), it does not apply to products. McCune v. F. Alioto Fish Co., 597 F.2d 1244, 1251 (9th Cir.1979) (defective winch). The pleadings and the evidence indicate that Jones Chemicals sold Ocean Beauty a product (filled cylinders) and not a service (the filling of cylinders owned by other parties).
 
 V. CONCLUSION
 
 16
 The district court's finding that Ocean Beauty's negligence caused Nunes' injuries is not clearly erroneous. This finding precludes liability of Jones Chemicals under either strict products liability or breach of implied warranties. Accordingly, we affirm.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In April 1993, an ammonia cylinder filled by Jones Chemicals exploded at a factory in Stockton, California. The cause is not in the record
 
 
 [2]
 While the district court adopted without change Jones Chemicals' proposed findings and conclusions, these proposals largely repeated the court's prior oral findings and conclusions. Moreover, "[w]hen the district court's conclusions are adopted from the prevailing party's suggestions, even though the appellate court is to engage in 'careful scrutiny,' the 'clearly erroneous' standard still applies." L.K. Comstock & Co. v. United Engineers & Constructors, Inc., 880 F.2d 219, 222 (9th Cir.1989)
 
 
 [3]
 The district court's judgment against Ocean Beauty and in favor of Jones Chemicals implicitly rejected Ocean Beauty's products liability and breach of warranty claims