Bennie **FERGUSON** and Mary Ferguson, Appellees

v.

**F.R. WINKLER GMBH & CO. KG,** Appellant.

No. 95–7100.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 18, 1996.

Decided April 5, 1996.

Rehearing and Suggestion for Rehearing In Banc Denied May 22, 1996.

Ronald G. DeWald, argued the cause for appellant, with whom Leonard L. Lipshultz, Silver Spring, MD, was on the briefs.

James M. Hanny, argued the cause for appellees, with whom Michelle A. Parfitt, Washington, DC, was on the brief.

Before: WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

SENTELLE, Circuit Judge:

In this products-liability action, plaintiff Bennie Ferguson claimed that defendant F.R. Winkler GMBH & Co. KG ("Winkler") was strictly liable for an injury allegedly caused by a design defect in bakery equipment that Winkler manufactured. Winkler moved for judgment as a matter of law both at the close of the evidence and after the jury's verdict against Winkler. The district court denied these motions as well as a motion for a new trial. Winkler now asks us to reverse any of these denials. Because the evidence presented does not adequately demonstrate that the equipment was unreasonably dangerous when it left Winkler's control, we do reverse the district court's denial of Winkler's motion for judgment as a matter of law and direct the district court to enter judgment for Winkler.

## BACKGROUND

Appellant Winkler designs and manufactures various equipment for baking production lines. One component of this equipment, and the focus of this litigation, is the string-line proofer, which transports shaped pieces of dough from one step of the production

process to another. According to Winkler's design of the proofer, the pieces of dough rest on trays attached to a moving chain, which, along with the gears and gear sprockets that drive the chain, are enclosed within a large metal duct. Removable panels along the duct permit limited access to the internal machinery for maintenance purposes.

Winkler has manufactured proofers with at least two different types of panels. The older proofer design had panels that were bolted onto the duct, and could only be removed and reinstalled through use of tools. Upon learning that maintenance workers did not always bolt these panels back onto the proofer when they were finished working, however, Winkler replaced these bolted panels with panels that could be removed and reinstalled by hand. On both the older and newer designs, Winkler included the same safety mechanism: an emergency shut-off button that, when pressed, would stop the line. In the proofer's operations manual, Winkler cautioned users to shut down the line prior to reaching inside the proofer to clean it. Winkler also made a practice of placing a similar warning on the machine itself.

Ottenberg Bakery, a mass producer of baked goods, received the newer model of the Winkler proofer, complete with operations manual and warning sign, in 1975. In using the proofer, Ottenberg grew frustrated with the occasional "double"—two dough pieces that were not fully separated on a single tray—and "hanger"—a piece that did not rest entirely on one of the moving trays—that would appear within the proofer. Not only did the presence of doubles and hangers decrease the number of sellable goods, but too many of the latter would periodically clog the line, as dough would accrete to the machinery with which it came in contact. Although workers could stop the line in order to remove the dough before it could jam the proofer, any such delay reduced the productivity of the bakery.

In an attempt to limit the effects of these "dough anomalies," Ottenberg replaced an exterior panel at one end of the proofer with a hinged, plexiglass door. This door permitted workers to reach into the interior of the proofer and salvage hangers or separate doubles, either by hand or by use of a long rod designed for these purposes. Ottenberg did not add any safety mechanism that would automatically stop the line when the door was opened, and workers became accustomed to reaching into the moving proofer because Ottenberg discouraged shutdowns of the line.

Appellee Bennie Ferguson, an employee of Ottenberg since 1971, had worked with the proofer since Ottenberg received it in 1975. On September 25, 1988, he opened the plexiglass door installed by Ottenberg and reached into the proofer to clear some pieces of dough, as he had done many times before. This time, however, his arm became caught in the moving machinery within the proofer. The accident permanently disabled Ferguson's upper arm.

Ferguson sued a number of parties, including Winkler, Winkler International Corporation, Winkler USA, and Bakers Equipment Wholesalers, Inc. He completed trial only with Winkler, whom he claimed was strictly liable for the defective design of the proofer and for failing to warn Ferguson adequately of the dangers of reaching into the moving proofer. After the district court denied various efforts by Winkler to take the verdict away from the jury, the jury awarded Ferguson $679,173 for the design defect and awarded Ferguson's wife $230,000 for her loss of consortium. Winkler then renewed its motions for judgment as a matter of law and for a new trial, but the district court denied each after oral argument.

Winkler now appeals the denial of its motion for judgment as a matter of law, claiming that Ferguson assumed the risk when he reached into the moving proofer, that the proofer, as shipped by Winkler, did not suffer a design defect, that any unreasonable danger resulted from Ottenberg's alterations to the proofer, and that Ferguson did not need additional warning from Winkler as he was fully aware of the danger involved in the moving equipment. Winkler also revives its motion for a new trial, contending that the judge should have given a more specific instruction regarding Ottenberg's modifications of the proofer.

## DISCUSSION

We review the denial of a motion for judgment as a matter of law *de novo*. *See McFarlane v. Caterpillar, Inc.*, 974 F.2d 176, 178 (D.C.Cir.1992). We will reverse the district court only if "reasonable men could not disagree" that the verdict was incorrect. *McNeal v. Hi–Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 641 (D.C.Cir.1988) (quoting *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1227 (D.C.Cir.1984)). Even though we resolve evidentiary disputes in favor of Ferguson whenever reasonable, *see id.*, the evidence on which the verdict relied must have been "more than merely colorable," but "significantly probative if the ... verdict is to stand." *McFarlane*, 974 F.2d at 179 (quoting *Siegel v. Mazda Motor Corp.*, 878 F.2d 435, 437 (D.C.Cir.1989)).

To determine whether the evidence presented was sufficiently probative to sustain a verdict arising within our diversity jurisdiction, we look to the law of the locality in which the district court that rendered the judgment sits. *See Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 553 (D.C.Cir. 1993) (noting that we have extended the *Erie* doctrine to the District of Columbia). According to the law of the District of Columbia, a manufacturer cannot be liable for a design defect unless the plaintiff proves that the product that caused the injury was sold in "an unreasonably dangerous condition." *Warner Fruehauf Trailer Co. v. Boston*, 654 A.2d 1272, 1276 (D.C.App.1995). The evidence, even taken in the light most favorable to Ferguson, demonstrates that Winkler not only limited potential dangers of the proofer through the design of the machine, but also extensively and explicitly warned persons not to misuse the proofer in a manner that might expose them to any remaining risk. Because Ferguson did not adequately demonstrate that the proofer was unreasonably dangerous when sold, we hold that the district court should have granted Winkler's motion for judgment as a matter of law.

*A. Did the proofer have an unreasonably dangerous design defect?*

This past year, the D.C. Court of Appeals reviewed its first design-defect claim based on a theory of strict liability in tort. *Id.* *Warner Fruehauf* adopted a four-step test for determining whether a seller should be strictly liable:

1) the seller [must have been] engaged in the business of selling the product that caused the harm;

2) the product [must have been] sold in a defective condition unreasonably dangerous to the consumer or user;

3) the product [must have been] one which the seller expected to and did reach the ... consumer or user without any substantial change from the condition in which it was sold; and

4) the defect [must have been] a direct and proximate cause of the plaintiff's injuries.

*Id.* *Warner Fruehauf* further analyzed what constituted an unreasonably dangerous defect through a form of the commonly used "risk-utility balancing test," which looks to " 'the risks, costs and benefits of the product in question and alternative designs' " and compares " 'the magnitude of the danger from the product [to] the costs of avoiding the danger.' " *Id.* at 1276 (quoting *Hull v. Eaton Corp.*, 825 F.2d 448, 453 (D.C.Cir. 1987)). Implicit in this analysis is that a court should weigh only those risks of a product against which a manufacturer has some duty to guard a worker, including those risks that emerge from the normal use of the product or objectively foreseeable misuse of the product. *See, e.g., Payne v. Soft Sheen Products, Inc.*, 486 A.2d 712, 726 (D.C.App. 1985); *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988) (weighing, under Maryland law, only risks incurred from normal use and "the incidental and attendant consequences that accompany normal use" (quoting *Payne*, 486 A.2d at 726)); *cf. Young v. Up–Right Scaffolds, Inc.*, 637 F.2d 810, 814 (D.C.Cir.1980) (finding no threshold duty to warn if risk is not reasonably foreseeable).

Ferguson's evidence as to whether the proofer was unreasonably dangerous focused entirely on the alleged risks that the proofer posed to individuals who reached inside it while it was running. In order to prevail against Winkler, then, it was not enough that Ferguson established a risk of

injury from reaching inside the moving proofer; he must also have shown a reasonably foreseeable likelihood that workers would reach inside the moving proofer either during normal operations or as part of some misuse that was reasonably foreseeable at the time the proofer left Winkler's control. *See McNeal,* 836 F.2d at 646; *Young,* 637 F.2d at 815.

*1. Was there an unreasonable risk of injury from reaching into the moving proofer as designed and sold by Winkler?*

Although there is some reason to think that any risk of injury from reaching into the proofer was slight, Ferguson advanced substantial evidence that a chain guard or an automatic safety interlock may indeed have further reduced the risk of injury to persons who reach inside the operating proofer. For purposes of our inquiry, then, we will assume that the lack of either in Winkler's design somewhat increased the risk of injury to persons reaching inside the moving proofer as compared to possible alternate designs.

*2. Was there an unreasonable risk that workers, during normal operations, would reach inside the moving proofer as designed and sold by Winkler?*

Ferguson has not shown significantly probative evidence that the design of the proofer contemplated workers reaching into the moving machinery as part of its normal operations. The proofer merely transported dough from one stage of production to another—a process that was completely mechanized. Neither the old nor new design of the proofer offered any means of unimpeded access to the moving line. Even the presence of doubles or hangers would not demand working with the dough in the moving proofer, as neither posed an immediate threat to the continued operation of the machine.

In addition, Winkler repeatedly warned individuals not to reach into the moving proofer at any time. The proofer, as originally installed by Winkler, displayed a large warning sign that read, in part, "Warning: Before cleaning or servicing or *removing protective ... covers,* disconnect electric power to machine...." (Emphasis added.) Although paint had hidden this warning by the day of the accident, there is no dispute that a Winkler employee placed such a warning on the proofer when installing the proofer at Ottenberg. A warning with a similar focus was included in the Operations Manual for the proofer that Winkler provided Ottenberg. These extensive warnings from Winkler that explicitly counseled workers against reaching into the moving proofer at any time confirm that Winkler did not intend workers to reach into the moving proofer as part of its normal operations.

*3. Was there an unreasonable risk that a worker would reach inside the moving proofer as part of some misuse that could have been reasonably foreseen by Winkler when it designed and sold the proofer?*

Ferguson also has not shown significantly probative evidence that Winkler should have reasonably foreseen either that workers would routinely remove a panel to manipulate the dough without stopping the line or that some employer, like Ottenberg, would permanently remove a panel in order to encourage workers to reach into the proofer. While evidence at trial did indicate that at least two bakeries have now replaced one of the panels on the proofer with a plexiglass door, Winkler had no cause to expect a bakery might adopt such a dangerous modification of the proofer at the time it delivered this proofer to Ottenberg. Certainly, in fashioning the more easily removable panels for the proofer, Winkler did not know of any line worker or bakery that had removed the exterior panels in order to allow access to the moving line; it was only aware of maintenance workers who occasionally neglected to re-install the protective panels. The new panels, which allowed line workers to re-install the panels without the need for tools, thus addressed the sole problem that seemed to arise from the old design. In addition, the evidence strongly suggests that a reasonable observer would not have expected knowledgeable workers to misuse the proofer and risk injury by removing an exterior panel and then reaching inside the moving proofer. That Ottenberg altered the proofer by replacing a panel with a hinged plexiglass door in order to encourage workers to reach into the proofer confirms that there was little risk

of workers routinely reaching into the moving proofer as Winkler had designed it.

■ Even assuming that the original design of the proofer did not sufficiently deter improper and dangerous conduct, Ferguson still has not shown that the proofer was unreasonably dangerous. Although the D.C. courts have never explicitly announced that adequate warnings may cure a design defect, *see Warner Fruehauf Trailer Co.,* 654 A.2d at 1278 & n. 16, they have declared that a manufacturer " 'is entitled to defend a strict liability claim based on defective design by showing that a warning accompanied the product that reduced its dangers.' " *Id.* at 1278 (quoting *Carter v. Johns–Manville,* 557 F.Supp. 1317, 1320 (E.D.Tex.1983)). Much relevant precedent confirms that the presence of warnings may transform an otherwise unreasonably dangerous design, even as compared to other designs, into a safe one. For example, the Maryland courts, which have often served as an aid in interpreting the products-liability law of the District of Columbia, *see Hull,* 825 F.2d at 453–54, have noted that adequate warnings may save a designer from strict liability for alleged design defects. *See Simpson v. Standard Container Co.,* 72 Md.App. 199, 527 A.2d 1337, 1341, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987). Similarly, we have noted that the "presence of warnings can cure [even an] unreasonable danger." *See Leachman v. Beech Aircraft Corp.,* 694 F.2d 1301, 1306 (D.C.Cir.1982). A comment to Section 402A of the Restatement (Second) of Torts, from which the District of Columbia derived its version of strict liability for design defects, *see Warner Fruehauf Trailer Co.,* 654 A.2d at 1274, also specifies that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." RE-STATEMENT (SECOND) OF TORTS § 402A cmt. j (1965).

■ In this case, Winkler's obvious and repeated warnings would have, if heeded, eliminated the risk of the injury that Ferguson suffered. As noted, the proofer, as installed, posed no risk unless some person reached inside the machine while it was operating. In its operations manual, Winkler informed users to work with the internal machinery only when the proofer was not running and could not be accidentally activated. Winkler could rely on Ottenberg to pass this information on to its workers, *see Cotton v. Buckeye Gas Products Co.,* 840 F.2d 935, 939 (D.C.Cir.1988), which Ottenberg did. *See* Ottenberg's Bakery, Inc., *Company Rules and Regulations* 9 (1987) (admonishing employees to "not reach into equipment that is in motion"). As a final precaution, Winkler, when it installed the proofer at Ottenberg, even put a large sign on the machine itself that warned any individual to not even open the machine while the proofer was running. Although this warning was subsequently obscured, the critical issue in a products-liability case in the District of Columbia is whether the warnings made the product safe at the time it left the manufacturer's control. *See, e.g., Warner Fruehauf Trailer Co.,* 654 A.2d at 1274, 1276 (holding that the dangerousness of the risks should be assessed at the time the product was sold). As the warning on the proofer was in place at that time, Winkler "ha[s] a right to rely on [this] warning," as well as its other warnings, "to insulate it from becoming a virtual insurer against all injuries arising from its product." *Higgins,* 863 F.2d at 1168. Because Winkler repeatedly warned workers not to expose themselves to the only risk involved in using the proofer, no reasonable juror could find either that knowledgeable workers might reach into the moving proofer or that the proofer, as designed and sold by Winkler, was unreasonably dangerous. *See id.* at 1167–68; *cf. McNeal,* 836 F.2d at 646 (D.C.Cir.1988) (finding that lack of warnings or instructions as to safe use made misuse reasonably foreseeable and the manufacturer liable).

### B. Other Grounds

Because the design of the proofer was not unreasonably dangerous, we do not need to comment on how the alterations made by Ottenberg affected Winkler's liability. Nor do we need to comment on whether Ferguson assumed the risk when he placed his

hand within the moving proofer or whether the district court erred when it did not instruct the jury as to Ottenberg's modifications as Winkler had requested.

We need comment on the "failure to warn" claim only to reject it. A manufacturer suffers liability for a failure to warn in the District of Columbia only if its warning about a product is not adequate to inform the intended user, who demonstrates the level of sophistication common for such users, of particular circumstances or conduct that will likely result in injury from the product. *See Payne,* 486 A.2d at 723. No reasonable party could disagree that Ferguson, who had worked for Ottenberg's since 1971 and had worked with the proofer since it had been installed, knew of the danger in reaching into the moving proofer "by virtue of his profession and experience." *East Penn Mfg. Co. v. Pineda,* 578 A.2d 1113, 1120 (D.C.App.1990). Even assuming that there was "a risk of harm reasonably foreseeable to the product supplier giv[ing] rise to a duty to warn," *see id.* at 1119, the extensive warnings offered by Winkler ensure that Winkler satisfied any duty to warn it may have had. Thus, we must reverse the district court on this ground as well.

## CONCLUSION

Although the D.C. Court of Appeals has recognized that a "finding of unreasonable danger most often turns on the absence of a safety device that was available at the time of manufacture," the lack of a safety mechanism, even ones available at the time of design, does not suffice to establish liability. *Westinghouse Elec. Corp. v. Nutt,* 407 A.2d 606, 611 (D.C.App.1979). "It is one thing to show that the [manufacturer] might have designed a safer product; quite another to show that the product [it] did design was unreasonably dangerous." *Id.* (quoting *Weakley v. Fischbach & Moore, Inc.,* 515 F.2d 1260, 1267 (5th Cir.1975)). Ferguson did not make the critical latter showing.

Although a judgment as a matter of law is not common, one is far more likely to issue in favor of parties who do not bear the ultimate burden of proof on an essential issue. *Cf. Warner Fruehauf,* 654 A.2d at 1279 (noting that directed verdicts are granted only "sparingly" in favor of the party with the burden of proof). Because Ferguson did not adequately demonstrate either that the proofer was unreasonably dangerous when it left Winkler's control or that Winkler failed to warn an experienced user adequately, he cannot prevail as a matter of law. We must reverse the district court's ruling to the contrary.

*It is so ordered.*