**JOHN W. JOHNSON, INC., a corporation, Plaintiff,**

v.

**BASIC CONSTRUCTION CO., Inc., a corporation, et al., Defendants.**

**Civ. A. No. 429–66.**

United States District Court
District of Columbia.

Nov. 20, 1968.

John P. Arness and James E. Murray, Washington, D. C., for plaintiff.

Alexander M. Heron and John A. Whitney, Washington, D. C., for defendant Basic Construction Co.

John F. Myers, Washington, D. C., for defendant Stone.

## OPINION

HOLTZOFF, District Judge.

This is the trial of an action for breach of contract, negligence and interference with contract rights brought by a subcontractor against a prime contractor on a project for the construction of a group of public buildings in Albany, New York, and against the architect in

charge of supervision of the operation. The project comprised the erection of a group of buildings for the State University of New York located in Albany, New York. The University is an educational institution maintained and conducted by a governmental entity entitled State University Construction Fund.

The defendant, Basic Construction Company, by contract with the State University Construction Fund as the owner, dated December 21, 1963, undertook to erect the buildings involved in this case. The cost of the work aggregated approximately $25,000,000. The defendant, Edward Durell Stone, was the supervising architect engaged by the owner by a contract dated April 1, 1963. The plaintiff, John W. Johnson, Incorporated, a District of Columbia corporation, was a subcontractor for painting buildings and covering the walls, pursuant to a subcontract with Basic, dated March 16, 1964. The subcontractor was to be compensated in the sum of $275,-000. The plaintiff claims that the defendants improperly and illegally interfered with the performance of its undertaking and accordingly brings this action for damages. The defendant, Basic, counterclaims for the cost of completing the work that the plaintiff had failed to finish.

■ At the outset something should be said about the functions of the architect as defined by the contract between him and the owner. In brief, in such a project, the architect acts in a dual capacity. He was to prepare the plans, advise the owner and supervise the performance of the construction contract. In this respect he acted as the agent of the owner. In addition, the architect was named as an impartial arbitrator of disputes that might arise under the contract between the owner and the contractor. Thus, the architect performed a dual function and acted in two different capacities. The legal position of such an architect or an engineer, which is very frequent in public construction projects, is discussed at length in considerable detail by the Court of Appeals for the Ninth Circuit, in the case of Lundgren v. Freeman, 307 F.2d 104, 116. The architect was given, also, express authority to direct the contractor to cancel any subcontract, if he determined that the subcontractor was incompetent, careless or uncooperative.

■■ Obviously, the architect in the performance of his duties as the owner's agent, may delegate their performance to subordinates. In this instance he assigned it to two members of his staff, one of whom was permanently stationed at the site of the project. The architect's function as an arbitrator, however, may not be delegated. An agreement to arbitrate which names a specific arbitrator, necessarily contemplates that the arbitrator will personally make decisions, unless the agreement otherwise specifies, which was not the case here. The arbitrator's acts are somewhat analogous to a quasi-judicial process.

The plaintiff's subcontract provided that changes might be ordered by the contractor during the progress of the work and that compensation would be adjusted accordingly. There was, however, an emphatic provision to the effect that no additional compensation would be payable to the subcontractor unless the extra work was ordered in writing by the contractor.

There has been a great deal of oral testimony, and numerous documents such as letters and memoranda, have been introduced in evidence during the lengthy trial. The salient facts, however, are few and most of them are not controverted. After the exterior of some of the buildings was completed, the plaintiff began the work of painting in the summer and fall of 1965. After awhile the paint on the ceilings of one of the buildings began to peel. An investigation of this unexpected turn of events was promptly undertaken. The architect hired an expert to study the subject. It was finally ascertained that the cause of the peeling was the presence, in the ceiling of stearic acid which had been used by the contractor to aid in removing the temporary molds or

"forms" as they are known, that had been employed in erecting the arched ceilings. The conclusion was reached that the contractor had improperly failed to remove the stearic acid, as he should have done before the subcontractor began to paint. It was determined that a third coat of paint should be applied in order to cure the trouble, although the original specifications required only two coats.

The contractor then instructed the plaintiff to apply a third coat of paint. The latter requested a change order or some other written assurance that the contractor would reimburse him for the cost of the extra work. The subcontractor was entitled to it in view of the provision of the contract that no additional compensation would be payable for any extra work unless it was ordered in writing by the contractor. The contractor declined to give any such assurance as was requested by the subcontractor.

■ Apparently the contractor's position was due to the fact that there was an unsettled dispute between him and the owner as to which of the two should eventually bear the additional expense. This dispute obviously does not concern the plaintiff subcontractor. In view of the terms of the subcontract the plaintiff was entitled to decline to do the extra work unless definite arrangements in writing were made to reimburse it for the additional cost.

Exactly such a situation arose in the case of Dave, Inc. v. Delia Plastering Co. (6th Cir.) 243 F.2d 732. The Court in that case gave effect to the provision of the subcontract that the subcontractor was not to be required to perform any extra work on the job until he received a confirming order for such work from the general contractor.

When the contractor persisted in his refusal to give to the subcontractor either a change order or some other written assurance of reimbursement for the extra cost, the plaintiff subcontractor precipitously abandoned the work on February 16, 1966. The contractor then immediately confiscated such equipment and material as the plaintiff had at the site. The contractor, Basic Construction Company, then caused the work to be finished by another subcontractor.

■ The Court is of the opinion that the plaintiff had a legal right to stop work in view of the fact that the contractor insisted that the plaintiff do the required extra work without giving it any assurance of payment. In the light of the provisions of the subcontract, the attitude of the contractor in this respect was wrong and the subcontractor, as just stated, was entitled to stop work and abandon the balance of the contract. The Court concludes that the plaintiff has proved a good cause of action against the defendant, Basic Construction Company.

■■ In determining the amount of damages that should be awarded, the Court has all the prerogatives of a jury, especially as this is not a case of liquidated damages that can be computed mathematically. The Court finds, first, insofar as damages are concerned, that the plaintiff is entitled to recover the balance due him for the work that he had actually performed up to its abandonment on February 16, 1966. This amount is not seriously in controversy. It aggregates the sum of $66,399.68. This item will be awarded to the plaintiff. The plaintiff is further entitled to recover the value of the equipment and material belonging to it located at the site of the job, which the defendant Basic seized upon the plaintiff's abandonment of the work. The undisputed testimony is that this value amounted to $5,367.57. Adding these two items, we reach the sum of $71,767.25 which the Court holds that the plaintiff is entitled to recover.

■ The plaintiff also seeks to recover the profit that it claims it would have realized had it completed the subcontract. The Court will disallow this item because the plaintiff abandoned the work instead of insisting upon continuing and finishing it. The plaintiff had

a right to abandon it, as the Court has indicated. It also had the right, however, to insist on continuing and completing the task called for by the original subcontract. It chose the former course, which, perhaps, was the more prudent one. It may not, however, have the benefit of both. Accordingly, as a matter of fairness and sitting as a jury, the Court will not allow this item.

■ The plaintiff further has a claim for consequential damages. This claim is disallowed as too speculative and remote, as well as on the ground that it has not been sufficiently proven. Moreover there is insufficient proof that any action of the defendant was the proximate cause or one of the proximate causes of the alleged damages.

■ The counterclaim of the defendant Basic is for additional costs that it claims to have incurred in completing the plaintiff's work, in that the compensation that it was required to pay to the new subcontractor was greater than that called for by the plaintiff's subcontract. The plaintiff, however, abandoned the work as he had a right to do, because the contractor insisted that the plaintiff do extra work but wrongfully declined to agree to pay compensation for it. Under the circumstances, the contractor is not entitled to recover the additional expense incurred by it as a result of its own wrong. The counterclaim will be dismissed.

■ The plaintiff's claim against the architect Stone arises out of a different chain of events that took place contemporaneously with those already narrated. Both the owner and the architect's representative had been complaining that the plaintiff did not have enough painters at work to be able to finish the project in accordance with the schedule. The owner and the architect's representative kept prodding the contractor and the contractor kept urging the plaintiff to hire more men, but to no avail. Finally, on February 9, 1966, the architect, through his subordinate at the project, directed the contractor to cancel the plaintiff's subcontract. This amazing directive was issued by the architect's office without notice to the plaintiff and without giving the plaintiff any opportunity to be heard, orally or in writing, formally or informally. This action on the part of the architect's office was contrary to the fundamental ideas of justice and fair play. The suggestion belatedly made at the trial that it was not appropriate for the architect to maintain any contacts with subcontractors is fallacious in this connection. Any such principle as that did not bar the architect's representative from according a hearing to the subcontractor before directing that his subcontract be cancelled.

The contractor, however, in the exercise of what appears to be proper caution, did not immediately carry out the directive to cancel the subcontract. The contractor merely informed the plaintiff that it had received this directive and endeavored to arrange a conference with the plaintiff's President in the hope of inducing a withdrawal of the directive, but was unsuccessful in accomplishing this result. No doubt, both in this instance and in the case of the other dispute, differences of personalities contributed to the result. This is not surprising, however, because we are dealing with human beings and not with machines. Differences of personalities enter into all human affairs and the Courts naturally must make allowances for them.

■ In the meantime, within a few days, after this directive was issued and while the other dispute was also in progress, the plaintiff, on February 16, as has been shown, had abandoned the work for other reasons. Since the architect's directive was not carried out, there is no foundation for any claim for damages against him, irrespective of whether his action was arbitrary or not.

Accordingly, in conclusion, judgment will be rendered by this Court as follows:

That the plaintiff, John W. Johnson, Incorporated, recover of the defendant,

Basic Construction Company, the sum of $71,767.25;

That the complaint as against the defendant Stone be dismissed on the merits;

That the counterclaim of the defendant, Basic Construction Company, be dismissed on the merits.

This opinion will constitute the findings of fact and conclusions of law.

Counsel will submit a proposed judgment.