Cosandra ROGERS, Appellee,

v.

INGERSOLL–RAND COMPANY,
Appellant.

No. 97–7131.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 9, 1998.

Decided May 29, 1998.

Barry R. Ostrager argued the cause for appellant, with whom Mary Beth Forshaw, Simona ·S. Gurevich, William H. Robinson, Jr., and ·Terrence M.R. Zic were on the briefs.

Charles C. Parsons argued the cause and filed the brief for appellee.

Before: WALD, SENTELLE and RANDOLPH, Circuit Judges.

SENTELLE, Circuit Judge:

Ingersoll–Rand Company appeals from judgment entered upon a jury verdict awarding a total of $16.7 million in actual and punitive damages for injuries arising out of an incident in which a machine manufactured by appellant backed over and maimed appellee Cosandra Rogers. Rogers had sued both in strict liability and in negligence. On appeal Ingersoll–Rand asserts that the district court erred in its jury instructions and in evidentiary rulings, and raises a number of other issues. We find no reversible error and affirm.

## I. Background

On April 17, 1992, a crew of workers repaved a portion of Military Road in the District of Columbia. Crew member Terrell Wilson operated a 50,000 pound milling machine manufactured by appellant Ingersoll–Rand (known as its model MT–6520) which stripped away layers of asphalt from the road. A crew member, appellee Cosandra Rogers, directed traffic, making sure her coworkers were not injured by passing cars.

Just before the crew was scheduled to break for lunch, Wilson prepared to back up the milling machine. He looked over his left shoulder and did not see Rogers, who apparently was standing in a blind spot with her back to the machine. As the machine slowly rolled backwards, its alarm—designed to go off when the unit backs up—did not sound. The MT–6520 backed onto Rogers's left foot, and then rolled onto her leg. Rogers's pelvis was crushed, and her internal pelvic organs were mangled. Her left leg was amputated. Her lost limb included the sacroiliac joint so that she will never be able to use a prosthesis and is as thoroughly confined to a wheelchair as if she were a paraplegic.

Invoking the diversity jurisdiction of the district court, 28 U.S.C. § 1332, Rogers sued Ingersoll–Rand, seeking compensatory and punitive damages resulting from her injury. She sought to hold Ingersoll–Rand strictly liable for her· injuries as a result of the allegedly defective design of the MT–6520, and also claimed that Ingersoll–Rand was liable for her injuries because of its negligence in designing or manufacturing the MT–6520.

At the conclusion of the trial, Ingersoll–Rand moved for judgment as a matter of law as to liability and punitive damages. The district court denied this motion. The jury subsequently concluded that Ingersoll–Rand was liable for Rogers's injuries and awarded her $10.2 million in compensatory damages and $6.5 million in punitive damages. Ingersoll–Rand then renewed its motion for judg-

ment as a matter of law and moved in the alternative for a new trial. The district court denied the motions, *see Rogers v. Ingersoll–Rand Co.*, 971 F.Supp. 4 (D.D.C.1997), and Ingersoll–Rand appealed.

## II. Discussion

### A.

■ First, we shall take up Ingersoll–Rand's claim that the district court erred when it failed to instruct the jury on its so-called "warnings" defense. At trial, Ingersoll–Rand introduced into evidence its Operation and Maintenance Manual, which instructs users of its milling machine to (1) stay ten feet away from the rear of the machine when it is operating; (2) verify that the back-up alarm works; and (3) "check area for people or obstructions in your line of travel." In addition, the MT–6520 itself had a sign which warned people to stay ten feet away.

Ingersoll–Rand proposed the following jury instruction, which it captioned "Requirement of Warning":

> Sometimes a product cannot be made reasonably safe, but it is nevertheless desirable that the product be manufactured and distributed because of its utility. In such cases, it is the obligation of the manufacturer to give appropriate warning of any dangerous condition which is likely to be encountered.
>
> If you find that the milling machine was accompanied by adequate warning which made the milling machine safe for use if the warnings are followed, then the milling machine was not unreasonably dangerous and was not defective, and you should find for defendant Ingersoll–Rand.

The district court stated that "[t]he requirement of warning is simply not proper law as stated in this [proposed instruction], as far as the Court knows, which says that if you give a proper warning there isn't anything else that [Ingersoll–Rand] had to do." Accordingly, the district court declined to give the proposed instruction, and rejected Ingersoll–Rand's post-trial motions which claimed that this ruling was erroneous. Before us, Ingersoll–Rand renews its argument that the proposed "warnings" instruction was mandated by the law of the District of Columbia, and

that the district court therefore erred by refusing to give it.

■ We review a district court's denial of a motion for judgment as a matter of law *de novo*. *Scott v. District of Columbia*, 101 F.3d 748, 752 (D.C.Cir.1996). Ingersoll–Rand's proposed instruction would have directed the jury to "find for [the] defendant" if it found "that the milling machine was accompanied by adequate warnings which made the milling machine safe for use if the warnings are followed." This instruction assumes that an adequate warning by itself would immunize a manufacturer from any liability caused by its defectively designed product. This is not a correct statement of applicable law.

■ In this diversity action we apply the law of the District of Columbia. *See Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 553 (D.C.Cir.1993) (noting the extension of the *Erie* doctrine to the District of Columbia). When interpreting the common law of the District of Columbia, we follow the decisions of the District of Columbia Court of Appeals, which is, for *Erie* doctrine purposes, treated as if it were the highest court of the state. *See* D.C.Code Ann. § 11–102 (1981). Under District of Columbia law, as interpreted by the District of Columbia Court of Appeals, a plaintiff seeking to recover in strict liability must establish that the injury-causing product was sold in "a defective and unreasonably dangerous condition." *Warner Fruehauf Trailer Co., Inc. v. Boston*, 654 A.2d 1272, 1276 (D.C.1995). Rogers alleged that Ingersoll–Rand sold the MT–6520 in "an unreasonably dangerous condition," because it lacked certain safety features, such as rear-view mirrors, kill switches, and a sufficiently reliable back-up alarm.

■ In *Warner Fruehauf*, the District of Columbia Court of Appeals applied a "risk-utility balancing test" to analyze whether a design defect was unreasonably dangerous. 654 A.2d at 1276. Under this test, a plaintiff "must show the risks, costs and benefits of the product in question and alternative designs, and that the magnitude of the danger from the product outweighed the costs of avoiding the danger." *Id.* (internal quotation marks and citations omitted). The *Warner*

*Fruehauf* court held that under a risk-utility analysis, a manufacturer "is entitled to defend a strict liability claim based on defective design by showing that a warning accompanied the product that *reduced its dangers.*" *Id.* at 1278 (citation omitted, emphasis added). Significantly, the court stated that a manufacturer could show that warnings "reduced" the dangers of its products—not that warnings could eliminate such dangers altogether. Indeed, the *Warner Fruehauf* court explicitly noted that "while the adequacy of a warning is relevant and may even tip the balance in the decision whether a product is or is not defectively designed, *it is not the sole consideration.*" *Id.*(emphasis added). "A warning," it added, "is only one of a product's many design attributes that weigh in the balance of dangers against utility ... but could be a pivotal design attribute in a particular case." *Id.*(citation omitted).

Ingersoll–Rand's proposed instruction does exactly what the District of Columbia Court of Appeals said was impermissible: it elevates the adequacy of its warnings to the sole consideration in the risk-utility analysis. As Ingersoll–Rand would have it, once the jury evaluates the milling machine's warnings and finds them adequate, its job is over; it "should find for [the] defendant." Since the "warnings" defense would have instructed the jury that adequate warnings trump all other factors—including the "magnitude of the danger from the product," *see id.* at 1276—Ingersoll–Rand's proposed instruction misstates the law of the District of Columbia.

Ingersoll–Rand argues that our decision in *Ferguson v. F.R. Winkler GMBH & Co. KG,* 79 F.3d 1221 (D.C.Cir.1996), provides authority for its proposed instruction. In *Ferguson,* a bakery employee sought to hold the manufacturer of a device known as a "stringline proofer" strictly liable for injuries caused by the device. The proofer shuttled shaped pieces of dough along a bakery production line. To gain access to misshapen pieces of dough which could clog the line, workers were instructed to press a button to shut down the line, and then to remove an exterior panel from the proofer to gain access to the dough. The plaintiff's employer purchased such a proofer and modified it, replacing an exterior panel with a hinged plexiglass door, which could be opened while the proof-

er was moving. While on the job, the plaintiff lifted the plexiglass door, attempting to clear away some dough, and the moving proofer injured his arm. In analyzing whether the proofer was unreasonably dangerous, we concluded that the manufacturer could not have reasonably foreseen that its product would be modified in such a dangerous way, and that there was little chance that such an injury would have occurred if the proofer had not been so modified. *Id.* at 1225–26.

We also considered the proofer's operations manual, which instructed users not to reach into a moving proofer, and a large sign on the proofer itself, which stated that the proofer should not be opened while it was running. *Id.* at 1226. We concluded that these "obvious and repeated warnings would have, if heeded, eliminated the risk of the injury that [the plaintiff] suffered." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965) ("Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.")).

Importantly, our analysis took into account both the design of the unmodified proofer (including its safety features) and the accompanying warnings about its use. We never stated that warnings alone will necessarily save a product from being unreasonably dangerous. Indeed, we observed that "the D.C. courts have never explicitly announced that adequate warnings may cure a design defect." *Id.* at 1226. It is thus not correct that a manufacturer may, under the law of the District of Columbia, merely slap a warning onto its dangerous product, and absolve itself of any obligation to do more. Ingersoll–Rand's claim that "[c]learly, under *Ferguson,* a manufacturer who provides an adequate warning need not take any other measures to protect against foreseeable misuse" simply misstates our holding.

We do not mean to dispute that warnings may tip the balance in a manufacturer's favor in individual cases. *See Warner Fruehauf,* 654 A.2d at 1278 ("A warning ... could be a pivotal design attribute in a particular case.")

(citation omitted). On the other hand, warnings need not be the dispositive factor in every case. Here, for example, it seems reasonably foreseeable that a worker with her back to a milling machine would be in no position to "heed" a sign on the machine instructing her to keep ten feet away. Under these circumstances, a manufacturer may have a heightened responsibility to incorporate additional safety features to guard against foreseeable harm. *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. *l* (1997) ("[W]arnings are not ... a substitute for the provision of a reasonably safe design.... Just as warnings may be ignored, so may obvious or generally known risks be ignored, leaving a residuum of risk great enough to require adopting a safer design.").[1]

The district court did not err when it refused to give the "adequate warning, therefore no liability" instruction proposed by Ingersoll–Rand, because that instruction misstates the law of the District of Columbia. Ingersoll–Rand may have been entitled to a less sweeping instruction on its "warnings" theory, but it never proposed one. The district court was under no obligation to tinker with the flawed proposed instruction until it was legally acceptable. *Cf. Parker v. City of Nashua, New Hampshire,* 76 F.3d 9, 12 (1st Cir.1996) ("[W]hen the instruction offered by the lawyer is manifestly overbroad, the district judge may reject without assuming the burden of editing it down to save some small portion that may be viable.").

### B.

The jury heard evidence that Ingersoll–Rand's MT–6520 milling machine had killed an 18-year-old named James Ledgerwood in Canada approximately a year before the Rogers incident took place. As the district court instructed the jury, evidence of the Ledgerwood accident was introduced for a single purpose: to show that Ingersoll–Rand was on notice of the alleged design defects of the MT–6520 before Rogers's subsequent injury. Before us, Ingersoll–Rand complains that the district court incorrectly forbade it from introducing additional information about the Ledgerwood accident. In particular, Ingersoll–Rand offered—and the district court disallowed—testimony which occurred at a coroner's inquest into Ledgerwood's death. According to Ingersoll–Rand, the excluded testimony, which consisted of the testimony of witnesses and the remarks of the investigating coroner, would have shown that "those investigating Mr. Ledgerwood's death concluded that [Ledgerwood's] own carelessness—not a defect in the MT–6520—caused his death." This fact, Ingersoll–Rand continues, would have "negate[d] [the Ledgerwood] accident's relevance as to notice of a defect." Ingersoll–Rand sought to introduce this testimony through its representative, who attended the inquest.

The trial court stated that the inquest testimony would be excluded because it was hearsay. Ingersoll–Rand argues that the district court's styling of the basis for exclusion was incorrect. Ingersoll–Rand offered the testimony to address the extent to which it was on notice of the milling machine's alleged design defects. This is correct. By definition, such testimony was not literally hearsay because it was not offered "to prove the truth of the matter asserted" (*i.e.,* that the decedent's own carelessness caused his death), but rather to prove that the defendant was not on notice of the alleged design defect. *See* Fed.R.Evid. 801. This is not, of course, to say that it was necessarily error to exclude the evidence, only that the stated

---

1. Illustration 14 to this comment of the Restatement is squarely on point:

   Jeremy's foot was severed when caught between the blade and compaction chamber of a garbage truck on which he was working. The injury occurred when he lost his balance while jumping on the back step of the garbage truck as it was moving from one stop to the next. The garbage truck, manufactured by XYZ Motor Co., has a warning in large red letters on both the left and right rear panels that reads "DANGER—DO NOT INSERT ANY OBJECT WHILE COMPACTION CHAMBER IS WORKING—KEEP HANDS AND FEET AWAY." *The fact that adequate warning was given does not preclude Jeremy from seeking to establish a design defect* under Subsection (b). The possibility that an employee might lose his balance and thus encounter the shear point was a risk that a warning could not eliminate and that might require a safety guard. Whether a design defect can be established is governed by Subsection (b). (emphasis added).

basis for the ruling was incorrect. It matters not. Even if we assume the exclusion was erroneous, such error was not reversible.

To determine whether we must reverse as a result of an evidentiary error, we apply 28 U.S.C. § 2111, which provides: "On the hearing of any appeal ... in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." Thus, if an error is harmless, the judgment will stand. We consider three factors when deciding if a given error is harmless: "If (1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the error, the error is harmless." *Carter v. District of Columbia,* 795 F.2d 116, 132 (D.C.Cir.1986) (citation omitted).

After considering these factors, we conclude that the district court's exclusion of the proffered testimony was harmless error, if it was error at all. First, the case was not close, at least as to whether the Ledgerwood accident placed Ingersoll–Rand on notice that the MT–6520 may have been defectively designed. Ingersoll–Rand's argument proceeds from the premise that where the proximate cause of injuries was the negligence of the injured party rather than the dangerousness of the instrumentality of injury, the manufacturer of the allegedly dangerous instrumentality is not placed on notice of the dangerousness of its product. Indeed, appellant argues that "the negligence of a prior accident victim negates that accident's relevance as to notice of a defect." In applying that theory to the facts of the present case, Ingersoll–Rand argues that Ledgerwood died, not just because he was negligent, but because he was practically suicidal: "[a]n investigation by Canadian law enforcement officials and an official Coroner's Inquest found that the Ledgerwood accident occurred because, *inter alia,* the decedent disregarded an audible, beeping back-up alarm and the operator's warnings." But the actual coroner's testimony cited by Ingersoll–Rand mentions neither back-up alarms nor operator's warnings:

[Ledgerwood] was working as a sideman on a pavement grinder, which was preparing the road surface for resurfacing. At one point he was directed to move out of the way behind the grinder, which was reversing. He apparently did that. The evidence would indicate that he placed his shovel in a bracket at the side of the road grinder, and in moving away he did not move fast enough, or through inattention or whatever, he did not observe that the track had pivoted and that his right heel was too close to the track. The result was that according to the witness, his heel was pinned by the track and of course, once he was pinned he would be unable to move it. Because of the noise of the machine he would not be able to hear him cry out. The track simply walked up his leg and ran over his thorax and head. He died as a result of massive internal and head injuries.

Ingersoll–Rand's argument is flawed both in its premise and its application. It cannot logically be the case that an accident, caused either proximately or ultimately by the dangerousness of an instrumentality, is rendered irrelevant as notice of dangerousness to the manufacturer of that instrumentality by the intervening or concurrent negligence of another, whether the injured party or a third person. How much warning the manufacturer received from a given incident may be influenced by the importance of the additional negligence in a given case, but the relevance *per se* of the incident as notice can hardly be extinguished. Further, even if we were to accept Ingersoll–Rand's shaky premise, it has not carried its burden of establishing reversible error in the district court's exclusion of the evidence in the present case. Granted, the operator of the MT–6520 that killed Ledgerwood testified that a "back up beeper" went off before the Ledgerwood accident took place, and that it was his practice to use hand signals to communicate with his co-workers. But the fact that the examining coroner did not refer to this testimony suggests to us that he did not rely on it in reaching his conclusions.

Furthermore, Ingersoll–Rand's assertion that it "was not held responsible in any way for the Ledgerwood accident" is undercut by the recommendations made by the coroner's jury that investigated Ledgerwood's death. That jury recommended the implementation

of certain safety measures (including additional ground personnel to oversee the operation of the MT–6520, and that machine operators should be trained and licensed), which would hardly seem necessary if Ledgerwood's negligence indeed was the sole cause of his death. Perhaps most importantly, the jury specifically recommended a design modification to the MT–6520: the installation of an "emergency shut off switch on both sides of the machine accessible to ground personnel." After considering the excluded testimony in context, we conclude that it is not remotely likely that the proffered testimony would have affected a jury's view of the role of the Ledgerwood incident as notice of dangerousness to Ingersoll–Rand.

The second question we must answer when weighing whether error is harmless is whether the issue was central. Clearly, the issue of Ingersoll–Rand's notice of a design defect is distinct from the central issue of whether such a defect existed at all. The district court recognized as much when it instructed the jury that "the report of the Ledgerwood accident is not proof of any defect in the machine involved in the accident." Having said this, we note that this issue did bear on the jury's consideration of the question of punitive damages, so that this factor is perhaps more favorable to Ingersoll–Rand's position than the first, but hardly dispositive in its favor.

Finally, we consider whether effective steps were taken to mitigate the effects of the error. The district court did not rule out the proffered testimony completely; it only ruled that it could not be introduced through the Ingersoll–Rand representative who was on the witness stand at the time. The district court's ruling specifically allowed for the possibility of Ingersoll–Rand's introducing this testimony through the witnesses who actually testified at the Ledgerwood inquest. Ingersoll–Rand chose not to pursue this alternative. The ruling, then, was not an outright ban on the introduction of the evidence, but was only a limitation as to how that evidence might be introduced. This strongly suggests that any error the district court may have made was harmless.

After taking all of the prescribed factors into account, we arrive at the conclusion that the district court's decision to exclude testimony from the Ledgerwood inquest, while perhaps error, does not warrant reversal. *See* 28 U.S.C. § 2111.

### III. Conclusion

Ingersoll–Rand has raised several additional arguments in addition to those mentioned above. Although we do not deem it necessary to discuss them here, we have given full consideration to each additional argument, and conclude that all of them lack merit.

For the foregoing reasons, we affirm the judgment of the district court.