ASHCRAFT & GEREL, a general partnership organized under the law of the District of Columbia, Appellee,

v.

Edward Paul COADY, Appellant.

No. 00–7105.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 2001.

Decided April 6, 2001.

Rehearing Denied May 17, 2001.

John G. Roberts, Jr. argued the cause for appellant. With him on the briefs were H. Christopher Bartolomucci, Catherine E. Stetson and Mark S. London.

Stuart H. Newberger argued the cause for appellee. With him on the brief was

Barry E. Cohen. Tara W. Blanchard entered an appearance.

Before HENDERSON, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Edward Paul Coady appeals the judgment that he breached his employment contract with the law firm of Ashcraft & Gerel and was therefore required to pay liquidated damages to the firm. He contends that the district court erred in denying him summary judgment on the breach of contract claim when the firm had committed a prior material breach of the contract and had concealed that breach from him until long after he was fired. He also contends that the district court erred in precluding him from introducing any evidence of the law firm's prior breach, most significantly, evidence of the firm's alleged "surreptitious manipulation of income and expenses" going "to the very heart of [his] defense and counterclaims." Finally, Coady contends that the district court erred in refusing to strike the liquidated damages claim as a penalty. We hold that the district court erred in precluding the admission of evidence that was relevant to Coady's defense to the breach of contract claim, and that the error was not harmless. Accordingly, we reverse the judgment.

## I.

Coady was an attorney at the law firm of Ashcraft & Gerel from 1989 until April 1998, when he was fired. At that time, he was the managing attorney of the firm's Boston office, a position he had held since 1993. Early in 1997, a number of disagreements about his compensation and his management of the Boston office flared up between Coady and the firm. By letter of July 15, 1997, Coady advised the firm that it had breached the employment contract[1] by failing to pay his semiannual salary bonus and that he would exercise his contractual right to take the matter to arbitration unless he was paid by August 15. On August 1, 1997, the firm sued Coady in the United States District Court for the District of Columbia for breach of his contractual and fiduciary duties to the firm and for conversion. Coady counterclaimed, alleging that the firm had breached its contractual and fiduciary duties to him. Coady also pursued his contractual right to arbitrate the dispute before an arbitration panel in Boston, Massachusetts.

Coady prevailed before the arbitration panel on his claim that the firm had breached the employment contract by improperly "straddling" income and expenses to manipulate his bonus compensation. "Straddling" refers to the firm's alleged effort to "shift[ ] 1997 income into 1998 and accelerate[ ] 1998 expenses in an effort to defraud [him]." The arbitration panel found that he was therefore owed a larger bonus in 1997 than he had received.[2] The federal district court in Massachusetts upheld the panel's ruling. However, the United States Court of Appeals for the

---

1. The employment contract of July 29, 1993, consisted of two parts: a "Prenuptial Agreement" specifying the apportionment of fees generated from Coady's representation of firm clients upon his voluntary or involuntary departure from the firm, and the "Employment Agreement" setting out the particulars of his employment, including, among other things, provisions setting his compensation and the amount of liquidated damages to be paid by either party upon a material breach of the Employment Agreement. *See Coady v. Ashcraft & Gerel,* 996 F.Supp. 95, 98 (D.Mass. 1998). For each reference, we refer to "the employment contract."

2. The arbitration panel concluded that "at least $700,000 should have been attributed to and been available for distribution by [the firm] as 1997 partner draw." Noting that the firm had failed to comply with its discovery orders, the panel was unable to determine the precise amount that Coady's 1997 bonus should have been, other than to find that he was entitled to at least $45,000 more than he received. The panel gave Coady the option of accepting the $45,000 or pursuing further discovery; Coady opted for the $45,000.

First Circuit reversed, holding that the arbitration panel lacked jurisdiction to consider Coady's claim that the firm had deliberately underpaid its senior partners in 1997 in order to lower the salary cap and thereby reduce Coady's bonus. *See Coady v. Ashcraft & Gerel,* 223 F.3d 1, 10 (1st Cir.2000). The employment contract authorized the arbitration panel only to interpret ambiguities in the contract, and the court viewed Coady's claim as a breach claim, not a contract interpretation. The court ordered that Coady's bonus claim (and the records of the arbitration panel) be transferred to the district court in the District of Columbia. Prior to the decision by the First Circuit, the jury in the district court for the District of Columbia returned a verdict that the firm had good cause to terminate Coady from employment and that Coady had not breached his fiduciary duties to the firm. The district court denied Coady's motion for judgment and for a new trial under FED.R.CIV.P. 50(b) and 59, and granted the firm's motion for judgment on the breach of contract claim in the amount of $400,000, which corresponded to the liquidated damages provision in the employment contract.

## II.

On appeal, Coady contends that the district court erred in three respects. First, he challenges the district court's denial of his motion for summary judgment on the firm's contract claim. Our review is *de novo. See, e.g., Kirkland v. District of Columbia,* 70 F.3d 629, 635 (D.C.Cir.1995) (citing *Barbour v. Merrill,* 48 F.3d 1270, 1276 (D.C.Cir.1995); *Mackey v. United States,* 8 F.3d 826, 829 (D.C.Cir.1993)); *see also Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1413 (D.C.Cir.1995).

■ In the district court, Coady moved for partial summary judgment on the grounds that the firm had straddled income and expenses between 1997 and 1998 in an attempt to deny him the bonus to which he was entitled under the employment contract, and that this prior material breach, which the firm concealed from him until after the firm fired him, should pre-clude the firm from being able to sue him for his alleged subsequent breach. The district court ruled that there was no such bar because Coady's selective non-performance and misdeeds did not constitute the type of action that he would have been entitled to take had he been aware of the firm's breach. In Coady's view, "[s]ettled law establishes that the firm's prior, hidden breach relieved [him] of the obligation to perform his duties, in whole or in part, under the employment agreement." Looking to section 237 of the Restatement (Second) of Contracts, he explains that this "long-standing" rule is designed to prevent the party to the first breach from profiting from concealing its bad acts while the party to the later breach is penalized.

The Restatement (Second) of Contracts § 237 states that a party's continuing obligations under a contract are conditioned on there being no "uncured material failure by the other party to render any such performance due at an earlier time." Comment c explains that "one party's material failure of performance has the effect of the non-occurrence of a condition of the other party's remaining duties ... even though the other party does not know of the failure." Illustration 8 further explains:

A and B make an employment contract. After the service has begun, A, the employee, commits a material breach of his duty to give efficient service that would justify B in discharging him. B is not aware of this but discharges A for an inadequate reason. A has no claim against B for discharging him.

As a general proposition, we take no issue with the rule in the Restatement. Rather, we hold that Coady is not in a position to rely on section 237. As the district court ruled in denying him partial summary judgment, Coady's "alleged bad acts would *not* have been justified [even if he had] known about the firm's material breach. [Instead,] Coady would have been justified in quitting or otherwise repudiating the contract, or in suspending perfor-

mance entirely ...." *See, e.g., Cities Serv. Helex, Inc. v. United States,* 211 Ct.Cl. 222, 543 F.2d 1306, 1313 (Ct.Cl. 1976); *Vermont Marble Co. v. Baltimore Contractors, Inc.,* 520 F.Supp. 922, 927 (D.D.C.1981) (citing *John W. Johnson, Inc. v. Basic Constr. Co.,* 292 F.Supp. 300 (D.D.C.1968), *aff'd,* 429 F.2d 764 (D.C.Cir. 1970)); 13 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 39:32, at 642–45 (Richard A. Lord ed., 4th ed. 2000). Had Coady known of the firm's prior breach, the district court observed, that knowledge would nevertheless not excuse his own breaches so long as he continued to work at the firm:

> Coady would be sheltered by Comment c if he had quit or refused to perform for an inadequate reason, but this is not what transpired. Material breach entitles the injured party to an election of remedies, including rescission or termination of the contract, not a license to commit torts or otherwise breach the contract.

The district court's analysis effectively responds to Coady's contention that imposition of an election of remedies analysis is flawed because he was unaware of the firm's breach by its income straddle. The only actions by Coady that could bar the firm's breach of contract claim would be actions that he would have been within his rights to take if he had known of the firm's breach. Because Coady remained at the firm, he could not ignore his obligations for performance under the employment contract, even if he was ignorant of the firm's breach.

The rationale for this result stems from the perverse incentives that would arise in contractual relationships if Coady's view was adopted. Under his approach, an employee's theft of clients and computer information could not be considered conduct in breach of contract by an employee who had decided to continue to work for an employer that had previously breached an employment contract. The authorities on which Coady relies do not support his contention that the firm's prior material breach barred its suit against Coady for his alleged later breach. Rather, those authorities support the proposition that Coady should have been allowed to defend by presenting evidence of the firm's prior breach. *See infra* Part III.

### III.

■ Coady contends that the district court erred in denying his alternative request to introduce evidence at trial that the firm materially breached the employment contract by straddling its income and expenses. The district court determined that there was "no reason for the jury to hear any evidence regarding [the firm's] income-straddle" because the arbitration panel "conclusively found that [the firm] did in fact engage in such behavior" and had awarded damages to Coady based on the firm's improper revenue manipulation. As noted, this part of the district court's ruling predated the decision of the First Circuit reversing the district court's affirmance of the arbitration panel's decision.[3] Even so, Coady maintains that notwithstanding his successful pursuit of arbitration at the time the district court ruled, he was entitled to introduce evidence of the firm's prior material breach as part of his defense to the firm's claim that he had breached his contractual and fiduciary duties to the firm.

The "income straddle" evidence that Coady sought to introduce at trial was based on his claim, denied by the firm at oral argument in this court, that the law firm had manipulated its income and expenses in 1997 in order to reduce the salaries of senior partners. This evidence

---

**3.** Prior to the decision of the First Circuit, and before the case went to the jury, the district court here vacated the arbitration panel decision, as beyond its authority, to the extent that the panel purported to decide the breach of contract issues. However, in deny-

ing the firm's compensation counterclaim, the district court also ruled that the parties were bound by the panel's factual finding that the firm had intentionally manipulated its 1997 income in order to lower Coady's bonus.

was relevant because Coady's bonus was capped by the "senior partner draw"; that is, Coady's total compensation, including his bonus, could not exceed what the senior partners earned. Coady contends that the "income straddle" evidence was relevant for the additional reason that it showed that the firm had a plan in 1997 to oust him, and thereby placed the firm's other adverse conduct toward him in a different light.

The arbitration panel initially found that Coady had "submitted prima facie evidence of a substantial straddle of income in 1997." The panel concluded that the firm's obligation to Coady required it to follow its normal course in accounting for income and expenses that straddle two years and that Coady's evidence raised a substantial question about the firm's recording of 1997 income because the firm's rebuttal "fell far short of adequately explaining the reasons for the substantial deposits in 1998 of certain checks bearing 1997 dates." After a further hearing affording the firm an opportunity to rebut Coady's prima facie case, the arbitration panel's supplemental findings concluded that the firm "engaged in a series of actions designed to artificially reduce the 'senior partner draw' for 1997, and to thereby lower the 'cap' on Coady's bonus income . . . ."

The district court ruled that the "income straddle" evidence was inadmissible at trial because the arbitration panel "conclusively found that the firm did in fact engage in such behavior." Because the firm conceded that it breached Coady's contract and because the arbitration panel subsequently awarded Coady damages based on the harm he suffered as a result of the breach, the district court concluded that there was no reason to introduce the "income straddle" evidence. The court explained that

> [i]f the jury finds that [the firm] wrongfully terminated Coady, Coady will also be entitled to severance pay and the unpaid settlement damages described in [the employment contract]. If the jury finds that [the firm] had good cause to terminate Coady, or that Coady otherwise breached the contract, Coady will owe [the firm] the same amount in liquidated damages and [the firm] will be relieved of its obligation to pay Coady the unpaid settlement damages.

Upon reviewing the district court's evidentiary ruling for abuse of discretion, *see Whitbeck v. Vital Signs, Inc.*, 159 F.3d 1369, 1372 (D.C.Cir.1998) (citing *United States v. Smart*, 98 F.3d 1379, 1386 (D.C.Cir.1996)), we hold that the district court erred when it ruled that the arbitration panel decision precluded Coady from introducing at trial—as part of his defense to the firm's breach claims—evidence of the firm's manipulation of his bonus. The cases that Coady cites support his contention that he was entitled to introduce such evidence as part of his defense. For example, in *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221 (3d Cir.1994), *vacated on other grounds*, 514 U.S. 1034, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995), the Third Circuit noted that "[i]n contract actions, if one party commits a material breach, the other party may generally use it to justify nonperformance even if, at the time of its own nonperformance, the second party was unaware of the first party's material breach." *Id.* at 1231 n. 16 (citing *College Point Boat Corp. v. United States*, 267 U.S. 12, 15–16, 45 S.Ct. 199, 69 L.Ed. 490 (1925); RESTATEMENT (SECOND) OF CONTRACTS § 385, cmt. a; § 225 & cmt. e; § 237 & cmt. c (1981)). Similarly, in *Western Auto Supply Co. v. Sullivan*, 210 F.2d 36 (8th Cir.1954), the Eighth Circuit noted that "it seems to be generally accepted by well[-]considered decisions that a party to a contract may defend on the ground that there existed at the time a legal excuse for non-performance by him although he was ignorant of that fact at the time of the breach." *Id.* at 39–40 (citations omitted). These authorities indicate not—as Coady maintains—that the firm was barred by its alleged prior breach from suing Coady for his subsequent breach, but that Coady would be entitled to introduce evidence of the firm's prior material breach as part of

his defense to the firm's claims that he breached the employment contract.

The record makes clear that Coady did not seek to introduce evidence of the "income straddle" in an attempt to duplicate damages already awarded him by the arbitration panel. Nor, as the firm argued, did Coady seek simply to introduce evidence that he had won his case before the arbitration panel; rather, he wanted to introduce evidence of the underlying facts. Evidence may properly be used in different proceedings for different purposes. *Cf., e.g., United States v. Spicer*, 57 F.3d 1152, 1158 n. 2 (D.C.Cir.1995) (discussing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)); 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD R. COOPER, FEDERAL PRACTICE & PROCEDURE § 4422 (1981). Here, in defense to the firm's claim that he had breached the employment contract, Coady sought to show that the firm had "long planned to oust him from the Boston office and had pressured him in every way to achieve that intended result." Admission of this evidence was not barred by the fact that it was the basis for the arbitration panel's award. *See Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1158 (D.C.Cir.1975) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)).

■ The question remains whether the error was harmless. In determining whether an error is harmless, the court measures the harm in terms of "whether the error had substantial and injurious effect or influence in determining the jury's verdict, not merely whether the record evidence is sufficient absent the error to warrant a verdict of guilt." *United States v. Johnson*, 231 F.3d 43, 47 (D.C.Cir.2000) (citing *Smart*, 98 F.3d at 1390). Consequently, an evidentiary error is harmless if "(1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the error ...." *Rogers v. Ingersoll–Rand Co.*, 144 F.3d 841, 846 (D.C.Cir.1998)

(quoting *Carter v. District of Columbia*, 795 F.2d 116, 132 (D.C.Cir.1986)).

Coady contends that evidence that the firm sought to drive him away lacked the "smoking gun" of the firm's income straddle. As the case went to the jury, the jury heard what Coady describes as the firm's "detailed story of Coady's alleged malfeasances, but not Coady's defense," and "although the jury was instructed that [the firm] had a duty to deal fairly and in good faith with [him], [the jury] never heard the key evidence supporting the conclusion that [the firm] had utterly failed to meet that standard." Coady maintains, therefore, that his defense was

> prejudiced ... beyond repair. Instead of hearing the full story of the parties' troubled relationship, including [the firm's] surreptitious attempts to force Coady out of the firm by substantially decreasing his compensation, the only complete story the jury heard was [the firm's]—a tale chock full of anecdotes about Coady's allegedly disloyal acts, and a tale devoid of the pivotal counter-evidence of [the firm's] bad faith.

In Coady's view, "[t]he evidence [he] had available of [the firm's] actions and was permitted to share with the jury would have taken on an entirely different light if the factfinder had known that, before those actions, [the firm] had begun to straddle income and expenses with an eye to driving Coady from the firm." The firm maintains that the district court properly ruled that the evidence was inadmissible because it did not excuse Coady's breaches and, in any event, Coady presented "considerable evidence of bad faith" on the part of the firm.

At trial, the firm introduced evidence that Coady had breached his contractual and fiduciary duties to it in numerous ways. Evidence relating to deliberate acts of misconduct included Coady's attempt to steal clients and to sabotage the firm's computer database. As the firm explained at oral argument in this court, most of the evidence regarding Coady's breach focused

on his conspiracy with a former associate and the fact that he did not inform the firm that the associate had left the firm. Coady's defense attempted, in turn, to show that the firm had planned to oust him from its Boston office for a long time. For example, he introduced evidence that in late 1996, he requested that the firm make him a senior partner, as he was the only managing attorney not also a senior partner. The firm denied his request. In the beginning of 1997, the firm told Coady that he must hire for a litigating position a new attorney who had no trial experience but who was the nephew of one of the senior partners. Coady resisted and was subsequently "threatened" that if he did not comply with the directive, his career would be "history." In June 1997, Coady was told that he could henceforth communicate with only certain partners in the Washington, D.C. office. In January 1998, the firm rejected Coady's request for reimbursement for expenses incurred in attending an annual conference on toxic tort litigation. This represented the first time such a reimbursement request by Coady was denied. In addition, the firm began refusing to pay monthly office expenses for the Boston office. Coady also introduced evidence that the firm did not inform him of its affiliation with another Boston firm.

The court need not be in a position to evaluate the "income straddle" evidence in order to conclude that without hearing about the firm's "income straddle," the jury could reasonably have viewed the evidence that Coady introduced in his defense as involving disputes likely to arise between an employer and its employee. Deciding whom to make a managing partner, whom to hire, and what expenses to pay are decisions that employers normally make, and an employee might not always agree with those decisions; the firm could reasonably argue it was entitled to make these decisions under the employment contract. Denying a contractually entitled bonus, however, is conduct of a different order. Evidence that the firm had improperly shifted revenues and expenses between 1997 and 1998 could well have affected the jury's assessment of the totality of the firm's adverse conduct toward Coady. From evidence that the firm would go so far as to violate its contractual obligation and its duty to act in good faith toward Coady by manipulating income and expenses in order to deny Coady his full bonus, a jury could reasonably conclude that the firm's other conduct was to be viewed in a different light. *See, e.g., Ciullo v. United States*, 325 F.2d 227, 229–30 (D.C.Cir.1963). Such evidence would have exposed the jury to venal conduct by the firm that was otherwise missing. Under the circumstances, the evidence was central to Coady's defense, and in the absence of any steps by the district court to mitigate the effects of the error, we hold that denying Coady the opportunity to present evidence of the firm's income straddle was not harmless error.

### IV.

■ Finally, Coady's contention that the district court erred in refusing to strike the firm's claim for liquidated damages is meritless. Our review is *de novo. See, e.g., American Nat'l Bank & Trust Co. v. Regional Transp. Auth.*, 125 F.3d 420, 439 (7th Cir.1997) (citing *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir.1985)); *Ruckelshaus v. Broward County Sch. Bd.*, 494 F.2d 1164, 1165 (5th Cir.1974).

This circuit has long recognized the validity of liquidated damages provisions, observing in *Progressive Builders, Inc. v. District of Columbia*, 258 F.2d 431, 433–34 (D.C.Cir.1958), that so long as the amount agreed to by the parties prior to the breach is reasonable, the court will uphold the provision: "[There is] difficulty of laying down any narrower test than the reasonableness in each particular case of the sum agreed upon as compensation for the breach." *Id.* (quoting 3 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 2214 (rev. ed. 1936)). Under District of Columbia law, liquidated damages clauses are valid and enforceable. *See, e.g., Horn*

& Hardart Co. v. National Rail Passenger Corp., 843 F.2d 546, 550 (D.C.Cir.1988) (citing Vicki Bagley Realty, Inc. v. Laufer, 482 A.2d 359, 368 (D.C.1984)); Burns v. Hanover Ins. Co., 454 A.2d 325, 327 (D.C. 1982). Coady, too, acknowledges that liquidated damages provisions can be legitimate, but he contends that the $400,000 amount is unenforceable on public policy grounds and because it is a penalty inasmuch as the contractual provision had no relationship to the actual damages suffered or anticipated. The authorities on which he relies, however, fail to advance his cause.

The Restatement (Second) of Contracts § 356(1) states that

[d]amages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

Id.; see also Davy v. Crawford, 147 F.2d 574, 575 (D.C.Cir.1945); Kingston Constructors, Inc. v. WMATA, 930 F.Supp. 651, 656 (D.D.C.1996), aff'd, 172 F.3d 919 (D.C.Cir.1998). Coady contends that where parties provide that one fixed sum be awarded as damages for any material breach, courts should "look askance at the liquidated damages provision." He also points to the prohibition in Rule 5.6 of the D.C. Rules of Professional Conduct on a law firm "restrict[ing] the rights of a lawyer to practice after termination of the [employment] relationship . . . ." DISTRICT OF COLUMBIA BAR, DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT § 5.6(a) (2001).

Our response can be brief. First, the employment contract did not specify that all breaches triggered the liquidated damages provision; rather, only those breaches deemed "material" triggered the payment of liquidated damages. See Horton v. Horton, 254 Va. 111, 487 S.E.2d 200, 204 (1997); 15 SAMUEL WILLISTON, A TREATISE

ON THE LAW OF CONTRACTS § 44:55, at 231–33 (Richard A. Lord ed., 4th ed. 2000). Second, in context, the liquidated damages amount was not unreasonable. When Coady was first hired by the firm in 1993, the amount of liquidated damages was set at $50,000. In 1994, the employment contract was amended to set the liquidated damages amount in increments: breaches occurring from 1994 to 1996 would carry an award of $150,000; breaches in 1997, $300,000; and breaches in 1998, $400,0000. Increasing the amount of damages each year was justified to reflect Coady's increasing value to the firm and his increased responsibilities within the firm. See, e.g., Mercer Management Consulting, Inc. v. Wilde, 920 F.Supp. 219, 237 (D.D.C. 1996) (citing Ellis v. James V. Hurson Assoc., Inc., 565 A.2d 615, 618 (D.C.1989)). Coady was not only the head of the Boston office, but, according to the firm, he was "the only lawyer in that office with substantial experience in the firm's Boston practice areas." Consequently, the firm can reasonably argue that his termination for cause would likely be disruptive and create both considerable losses and expenses while the firm sought to replace him. Indeed, a firm partner testified that the estimated business opportunities lost as a result of Coady's termination was between $1 million and $1.5 million.

Finally, Rule 5.6 of the District of Columbia Rules of Professional Conduct is inapplicable because the liquidated damages were not linked to Coady's decision to compete with the firm. See DISTRICT OF COLUMBIA BAR, OPINIONS OF THE LEGAL ETHICS COMMITTEE OF THE DISTRICT OF COLUMBIA BAR INTERPRETING THE CODE OF PROFESSIONAL RESPONSIBILITY, NOS. 77 & 97 (1984). Notwithstanding testimony by a firm partner that the liquidated damages provision was designed to penalize an attorney who sought to compete with the firm, the terms of the employment contract are readily distinguishable from a contract not to compete. Cf. Hackett v. Milbank, Tweed, Hadley & McCloy, 86 N.Y.2d 146, 630 N.Y.S.2d 274, 654 N.E.2d 95, 97–102

(1995). Rather, the liquidated damages provision was like that approved in *Mercer*, 920 F.Supp. at 237.

Accordingly, we affirm the district court's denial of judgment on the ground that the firm was not barred from suing Coady for breach of contract by reason of its own prior material breach of the contract, and we affirm the district court's refusal to strike the firm's claim for liquidated damages. However, because Coady was prejudiced by the denial of an opportunity to introduce evidence of the firm's income straddle, we reverse the judgment and remand the case to the district court.